## OVERLAND AUTOMOBILE CO. v. CLEVELAND.  (No. 8775.) *

(Court of Civil Appeals of Texas. Dallas. March 17, 1923. Rehearing Denied April 14, 1923.)

1. **Corporations ⚖⇒448(1) — Employment contract held not void as a contract before incorporation not affording a valid basis for distribution of profits.**

A contract of employment in good faith providing compensation should be a certain interest in the profits of the business of another corporation thereafter organized and owned and controlled by the contracting corporation as a mere selling agency, of which the employé was secretary-treasurer, was not against public policy ultra vires and void, as a contract before incorporation not affording a valid basis for the distribution of profits, since, being designed to benefit the corporation and further its business, it was likewise designed to benefit the stockholders, and involves no violation of their rights.

2. **Frauds, statute of ⚖⇒49—Contract of employment not expressly limited to one year does not come within statute.**

A parol contract of employment at a monthly salary is capable of being performed within one year, and does not come within the statute merely because its performance is not expressly limited to one year from its date.

3. **Corporations ⚖⇒456 — Corporation owning business of another held in no position to say contract of employment compensated by share in profits of other's business against public policy as to stockholders sharing profits.**

A corporation which owns and controls the business of another corporation is the only bona fide stockholder of the other, and it is not in a position to say that a contract of employment providing for a share in the profits of the other's business as compensation is void as against public policy on the ground that profits must go to stockholders in proportion to the respective amounts of stock owned.

4. **Corporations ⚖⇒13 — Effect of charter as contract stated.**

The charter of a private corporation is a contract between the corporation and the government, and also between the corporation and the stockholders, binding them to submit to the management of the business by the managing officers and board of directors, and, by virtue of the charter, there also exists a contract among the stockholders with each other that the business will be directed and funds applied in conformity with the charter.

5. **Corporations ⚖⇒456—Contract of employment in branch business of corporation held not affected by the granting of a charter thereto.**

A contract of employment connected with a branch sales agency of a corporation em-

ployer, providing for a share in the profits of the business as part compensation, was independent of and distinct from stipulations of a corporate charter granted to such branch business in which the employé took stock, but which was still owned and controlled by his employer, and his contract was not impaired or affected thereby.

**6. Pleading 343—No error in refusing to render judgment for defendant because cross-action on note not answered where petition put validity of note in issue.**

There was no error in refusing to render judgment for defendant on cross-action on a note, because not answered by a pleading filed subsequent thereto, where the petition had already put in issue the validity of the note, and defendant's right to recover on it by describing the transaction in connection with which the note was given, and alleging circumstances rendering it void, though it was not specifically mentioned.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by T. K. Cleveland against the Overland Automobile Company. Judgment for plaintiff, and defendant appeals. Affirmed.

W. B. Hamilton, of Dallas, for appellant.
J. D. Kugle and Wm. M. Cramer, both of Dallas, for appellee.

HAMILTON, J. On August 15, 1917, appellant, a corporation domiciled in Dallas, Tex., made appellee, one of its former employés, then residing in Abilene, Tex., a proposition of employment by letter of that date. Appellee in response to the offer went to Dallas and accepted it. The contract thus formed between the parties was to the effect that appellee should go to Sherman, Tex., and there take the position of office man in appellant's business, which was distributing Overland automobiles. Appellee thereupon went to Sherman and took up his duties under the employment. Under the contract he had charge of retail sales, of sales of accessories, and also charge of the records, including accounts. His compensation was fixed at a salary of $125 per month and 20 per cent. of the profits of the business at Sherman. The business at Sherman, although operated under the name of Overland-Sherman Company as an independent subdistributor, was to be, and, in fact, it seems, was virtually, although confidentially, a branch of appellant.

On the 1st day of November, 1917, the Sherman business obtained a corporation charter from the state of Texas. The incorporators, as disclosed by the articles of incorporation, were appellee, a coemployé at Sherman, G. C. Griffin, and the officers of appellant in Dallas. The capital stock was $5,000. It was divided into 50 shares, valued at $100 each. Appellant furnished all the capital stock in automobiles valued at $5,000, wholesale price. Stock certificates were issued to appellee,

Griffin, and two of appellant's officers as follows: 9 shares stood in appellee's name, 15 shares in Griffin's name, and 13 shares in the name of each of said two officers of appellant. No stock was issued in the name of appellant's third officer, who was one of the organizers and one of the first board of directors, he having died before the stock was issued. Each of the four in whose names the stock certificates were issued executed notes to appellant for the respective amounts of stock issued to them. The amount of the note thus given by appellee was $900, and his certificate was transferred to appellant and held by it with the note, which was also done in the instance of the note made by each of the others.

Appellee performed his duties after the organization of the corporation substantially as he had agreed before, his official position under the corporate organization being secretary-treasurer. The president and general manager of the appellant testified that one of the first steps taken after the letter was written to appellee, making him an offer of $125 per month and 20 per cent. of the profits, which offer he accepted, was to organize the business. It was organized by canceling the contract then existing and organizing the corporation, to the capital stock of which appellee and Griffin subscribed 24 shares and the officers of appellant 26 shares of the total 50 shares as above stated.

On May 20, 1918, appellant, over its corporate signature by its president, addressed the following letter to appellee:

"We have decided, owing to the unsatisfactory manner in which the business at Sherman has been conducted, to ask for the resignation of both yourself and Mr. Griffin, this resignation to be effective June 1, 1918, and a complete reorganization of this company will be effected. In the meantime Mr. John M. Hendricks, personal representative of the interest of the Overland Automobile Company of Dallas, will be in complete charge. Settlements between the Overland-Sherman Motor Company and yourself and Mr. Griffin will be made as soon after June 1st as the affairs of the Overland-Sherman Motor Company can be satisfactorily closed up."

Other letters from appellant to appellee of previous dates directing the policy of the business, and giving specific instructions, were signed by the corporate name of appellant, as that above copied. They were the expressions of the Dallas corporation, not of individuals or officers of the Sherman corporation as distinguished from the Dallas corporation. Appellee's replies were all addressed to the Dallas corporation, and not to individuals or officers of the Sherman corporation. In none of these transactions by correspondence was the Sherman corporation recognized by either party.

The first directors' meeting was held Oc-

tober 5, 1917. At that meeting the appellee's salary was fixed by the board at $125 per month. At a subsequent meeting of the board of directors on February 7, 1918, appellee's salary was increased to $150 per month, and, in addition to this sum, he was authorized to draw $25 per month, which was to be charged against profits earned and due him at the end of the fiscal year.

Various exceptions to the petition setting up appellee's right of recovery were interposed by appellant. They were overruled, and the procedure below in those instances is made the basis of several propositions presented to this court.

[1, 2] It is first contended that the appellee could not recover the 20 per cent. of the profits which he alleged himself entitled to receive under the contract of employment, because a contract of such nature made prior to the formation of a corporation cannot be a valid basis for the disbursement of profits, and is against public policy, ultra vires, and void; the only lawful distribution of a corporation's profits being according to shares of stock. We do not accede to this view. As an incentive to exertion in advancing the interests of a business it is not uncommon to hold out to employés the inducement and reward of participation in the profits. If this may be done to further the business of an individual, then on the same basis of reason and principle we think it may be done in the interest of a corporate business. It involves no violation of shareholders' rights. It is the very antithesis of such violation. As it is designed to benefit the corporation and further its business, so is it designed likewise indirectly to benefit the shareholders. Of course, the managers or directors of a corporation could not use such arrangement as a guise to subvert, fraudulently or in any wrongful or unconscionable way, dividends from stockholders. But there is no intimation here that the agreement was not made on the part of appellant in the interest of its shareholders and in accordance with the utmost good faith. Both the petition and proof of appellee was that the Sherman business was, in fact, owned by appellant, and that the issuance of stock to individuals was but a concealment of that fact in appellant's behalf. The letter proposing the employment tends to support this view. So did the general course of the conduct and supervision of the Sherman business bear it out. The business seems to have flourished under the arrangement made. Appellant obtained a primary and distinct benefit from it. The Sherman business seems to have been a mere selling agency for appellant, completely controlled and dominated by it. It gave the directions. It exercised control. If in fact it owned the Sherman business, as claimed by appellee (and the proof in his behalf was sufficient to establish this claim in effect), then there was no actual bona fide stockholder ex-cept appellant. Certainly it was not in a position to say that its trade with appellee was void and against public policy on the ground that profits must go to stockholders in proportion to the respective amounts of stock owned. As we view the facts alleged and supported in appellee's behalf by proof, the general principle for which appellee contends with reference to the distribution of profits of corporations is not infracted by the action of the lower court against which appellant's propositions on this feature of the case are directed.

[3] Appellant challenges the alleged contract as being in contravention of the statute of frauds. We think this is erroneous. Treating the contract as resting altogether in parol, it is apparent that under appellee's testimony it might have been discharged within one year. A contract does not come within the statute of frauds merely because its performance is not expressly limited to a period of one year from its date. If it is capable of being performed within one year, then it is not within this statute. Such was the contract alleged and proved on appellee's behalf.

Appellant advances the proposition that a contract for the issuance of stock in a corporation before incorporation is unlawful and void if it contains no provision for payment therefor in money, labor, or property. The contract sued upon, according to the findings of the jury in conformity with pleadings and proof, was not a contract for stock in the corporation. It was a contract of employment.

[4, 5] Appellant's proposition to the effect that appellee's petition disclosed that he sought recovery upon correspondence and verbal negotiations as evidence of a contract reduced to writing in the form of a corporation charter subsequent to such correspondence and verbal negotiations, and that the subsequent written charter, the binding effect of which was not assailed, controlled the subject of such negotiations, we regard as unmeritorious. A charter of a private corporation is a contract, it is true. It is a contract between the government which grants it and the corporation. It is also a contract between the corporation and the shareholders. The contract between the corporation and the shareholders, however, is a contract concerning the pursuit of the objects for which it is created. The stockholders and the corporation between themselves must abide by the articles of association and the by-laws. The stockholders are contractually bound to submit to the management of the business by the managing officers and board of directors under the by-laws. There also exists a contract among the stockholders with each other by virtue of the charter to the effect that the business will be directed and the funds applied in conformity with the charter. But such contractual relations do not become sub-

stituted for the transaction alleged by appellee. It was independent of and distinct from charter stipulations. Its existence was no more impaired or affected by the granting of a charter to the Sherman business than would have been that of a contract between a party to whom no stock was ever issued and organizers of the prospective corporation.

Appellee having alleged the contract of employment to be that, if he should quit or be discharged, the stock issued to him would be taken over by appellant, and a settlement with him would be made on the basis of 20 per cent. of the profits, and appellee's evidence supporting this allegation, we think appellant cannot complain either of the action on exceptions or as to giving certain charges and refusing others relating to the question of contract and the effect of appellee becoming a stockholder in the Sherman corporation. The specifications of error as to such charges given and refused are overruled.

[6] We think there was no error committed by the trial court in refusing to render judgment for appellant upon its cross-action for the amount of the note, although the cross-action was not answered by a pleading filed subsequent to the filing of the cross-action. The petition had already put in issue the question of the validity of the note and appellant's right to recover upon it. The note, it is true, is not specifically mentioned in the petition, but the transaction in connection with which the note was given is described and circumstances alleged which render it void, especially when considered in connection with the allegations of the cross-bill. Appellee alleged that the stock issued to him was to be taken over by appellant, if he were discharged or ceased to work for the Sherman business, and that 20 per cent. of the profits were to be his. Appellant alleged that the note was given for the stock. The proof adduced in appellee's behalf was sufficient to show all the following facts: That the contract was as he claimed it to be; that the Sherman business was but a subsidiary of appellant; that appellant made all the agreements and contracts for the Sherman business; that appellant dominated the Sherman business; that appellant discharged appellee from his position, and dissolved the Sherman business, taking over the assets and liquidating it; and that, ownership of the stock being in appellant, appellee owed nothing for it.

The pleadings and proof were sufficient to comprehend the issue of liability of appellee to appellant on the note as well as appellant's liability to appellee under the contract alleged by the latter.

We believe the record discloses no reversible error and the judgment will be affirmed.