"It is possible that, if the enforcement of that judgment had in these cases been resisted, some further and more formal entry might have been demanded." [55 Tex.Cr. R. 216, 117 S.W. 855.]

In the present case the enforcement of the purported judgment was being resisted and was under direct attack as not being such a judgment as would support enforcement under the capias pro fine.

We are constrained to agree with the contention now made. The motion for rehearing is granted. Our former opinion is withdrawn and this opinion substituted therefor.

The judgment of the trial court remanding appellant is reversed and appellant ordered discharged.

### AETNA INS. CO. v. AVIRITT et al.
### No. 2708.

Court of Civil Appeals of Texas. Waco.
Jan. 30, 1947.

Rehearing Denied Feb. 13, 1947.
Motion to Retax Costs Overruled
May 8, 1947.

Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, for appellant.

Jack C. Altaras and J. K. Russell, both of Cleburne, for appellees.

TIREY, Justice.

This is a suit on an automobile collision insurance policy. On trial in the County Court, without the aid of a jury, plaintiffs recovered judgment in the sum of $360.00 against defendant, with interest and costs, and defendant has appealed.

Appellant's points 1 and 2 assail the judgment of the trial court substantially on the ground that the court erred in holding that no notice of cancellation was mailed to plaintiff at plaintiff's address, as set out in the policy, and that such policy was in force and effect on January 6, 1946.

Defendant seasonably requested the trial court to file findings of fact and conclusions of law, which the court did, but since defendant denied liability on the ground that said policy was cancelled prior to the collision on January 6, 1946, and since we think cancellation is controlling, we quote only the pertinent part of the court's findings: "(11) Defendant failed to mail a no-

tice of the cancellation of said policy to plaintiff at plaintiff's address as set out in the policy."

The court concluded in effect that the policy had not been cancelled prior to the date of the collision, and that by the terms of the policy defendant was liable to plaintiff for the damages she sustained in the sum of $410.00, less the $50.00 deductible provided for in the policy.

Plaintiffs tendered in evidence the insurance policy which was issued under date of June 25, 1945. Section 13 of the policy provided in part: "This policy may be cancelled by the insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the insured or by the company shall be equivalent to mailing."

It is without dispute that the insured, Mrs. B. A. Aviritt, lived at Joshua, Texas, Route 1, and that she had been living there some twenty years, and such address is written into the face of the policy. Plaintiff also tendered in evidence copy of the cancellation notice sent to K. W. Armstrong, the company's local agent at Cleburne, the pertinent parts of which are:

"November 7, 1945

"Mrs. B. A. Aviritt
Route 1,
Joshua, Texas.
Dear Sir:

We hereby cancel our Policy No. 42–236 issued to you on June 26, 1945 and hereby give you notice thereof, as provided by the terms of said policy.

Take notice that at 12:01 A.M. Standard Time, on the 12th day of November, 1945, the said policy will terminate and cease to be in force.

The excess of paid premium above the pro rata premium for the expired time (if not tendered) will be refunded on demand.

    Respectfully yours,

        Southwestern Underwriters Department of the Aetna Insurance **Co.**

cc-Mortgagee
Cleburne National Bank,    Per ——————— Agent."
Cleburne, Texas.

Stamped across the face of the copy was the following:

"Cancelled date 11-12-45
PR.——— Ret. Prem. 15.31
Order of Company's request."

Mr. Armstrong testified in effect that he saw the notice sent to the Cleburne National Bank.

W. E. Borger, Vice-President of the Cleburne National Bank, testified to the effect that in June, 1945, he made a loan on the car in question to Mrs. Aviritt and that a copy of the cancellation notice tendered in evidence looked exactly like the one that they received; that they received such notice concerning Mrs. Aviritt's automobile policy on November 12th, and that such notice stated that the policy was cancelled.

Mr. F. J. Bray of Dallas testified to the effect that he was an employee of T. A. Manning & Sons in November, 1945, as "manager of their casualty and miscellaneous lines department"; that he prepared and sent out a cancellation notice to Mrs. Aviritt on her policy; that the notice tendered in evidence was an exact copy of the original which he sent except for his signature which appears on the original; that they use a special form for cancellation for their convenience and that under their procedure the original of the cancellation notice is mailed to the addressee, who is the assured or owner of the policy; that a copy goes to the mortgagee, one to the local agent who wrote the policy, and one to the home office and one to the general agent; that the notice was prepared by his secretary; that after she typed it, it came back to his desk for his signature; that he signed the original; that after he signed it he put it in the special mail box to take to the postoffice and obtain at the postoffice a receipt giving evidence that it was mailed to the addressee; that he gave specific instructions to his mail clerk concerning getting a postoffice receipt for certain mail; that the mail clerk gets special postoffice receipts only on special request, and where these receipts have been prepared in instances like this one; that he called the letter addressed to Mrs. Aviritt to the attention of the mail clerk and that the mail clerk did bring back receipt from the postoffice and gave it to him. He further testified to the effect that on November 7, 1945, pursuant to his request, the mail clerk brought back two receipts from the postoffice department which he identified and which were tendered in evidence and marked Exhibits Nos. 1 and 2. Exhibit No. 1 is:

"Form 3817      Postoffice Department
Received from:
T. A. Manning & Sons, Gen. Agts.
2010 Bryan, Dallas, Texas
One piece of ordinary mail addressed to
Cleburne National Bank, Cleburne, Texas.
This receipt does not provide for indemnification.
            Postmaster."

"Exhibit No. 2 is:
"Form 3817      Postoffice Department
Received from:
T. A. Manning & Sons, Gen. Agts.
2010 Bryan, Dallas, Texas
One piece of ordinary mail addressed to
Mrs. B. A. Aviritt
Route #1,
Joshua, Texas.
This receipt does not provide for indemnification.
            Postmaster."

Walter Brown testified to the effect that he was in the employ of T. A. Manning & Sons, and that he was the mail clerk to whom Mr. Bray referred, and he identified the foregoing postoffice receipts, and that he delivered the pieces of mail to the postoffice at the request of Mr. Bray and brought back the above receipts. Mrs. Aviritt testified to the effect that she did not receive the notice of cancellation dated November 7, 1945.

■ It is obvious that the sole question presented by this testimony is: Did the

insurance carrier comply with its contract in mailing notice of its cancellation to Mrs. Aviritt? We think it did. The cancellation clause in the contract is plain and unambiguous. The company had the right to cancel the policy "by mailing to the insured at the address shown in this policy written notice stating when not less than five days, thereafter such cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period." The evidence is without dispute that the company fully complied with the foregoing provision of its policy. See California-Western States Life Ins. Co. v. Williams, Tex.Civ.App., 120 S.W.2d 844, point 1 (writ dismissed); Frontier-Pontiac, Inc., v. Dubuque Fire & Marine Ins. Co., Tex.Civ.App., 166 S.W.2d 746; Austin Fire Ins. Co. v. Polemanakos, Tex.Com.App., 207 S.W. 922, point 1, p. 925; Summers v. Travelers Ins. Co., 109 F.2d 845, points 1-4, 127 A.L.R. 1336; Appleman on Insurance, Vol. 6, § 4186, p. 727.

The testimony in the record with reference to the cancellation is direct and positive and there are no circumstances in the record tending to discredit or impeach the testimony tendered with respect to this matter. "It has been frequently held, however, that, when the evidence of an interested witness is direct and positive on the point at issue, and where there are no circumstances in the record tending to discredit or impeach his testimony, a verdict contrary thereto will be set aside, that such testimony will justify an instructed verdict, and that a judgment contrary thereto may be reversed and rendered." Dunlap v. Wright, Tex.Civ.App. 280 S.W. 276, point 6, p. 279, and authorities there collated.

Since the insurance carrier complied with the provisions of its policy as to giving notice for cancelling the same and since the evidence is without dispute that such notice was given prior to the loss accruing to the plaintiff, it follows that the judgment of the trial court must be reversed and rendered, and it is so ordered.

The judgment of the trial court is reversed and rendered.