Charles W. KEMP, Appellant,

v.

Joe WESTBROOK, Appellee.

No. 16000.

Court of Civil Appeals of Texas.

Dallas.

April 20, 1962.

Rehearing Denied June 8, 1962.

Wm. Andress, Jr., Dallas, for appellant.
Vactor H. Stanford, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from a judgment (1) in favor of appellee Joe Westbrook permanently enjoining appellant Charles W. Kemp from foreclosing an alleged deed of trust lien against certain real property, and (2) against appellant Charles W. Kemp on his cross-action seeking judgment for the alleged balance due on a note and for foreclosure of the deed of trust lien.

On December 6, 1960 appellee filed his suit for injunction and was granted an ex parte restraining order enjoining appellant from proceeding with a trustee's sale advertised for that day, December 6, 1960.

On December 15, 1960 after a hearing appellee was granted a temporary injunction. The court's order recited that, having heard the pleading and evidence, the court was of the opinion that appellee had not been delinquent on his promissory note, nor had he violated any of the covenants contained in the deed of trust.

The maturity date of the note was December 22, 1960. On December 23, 1960 appellant, alleging default in payment, filed his cross-action to appellee's injunction suit, in which cross-action he prayed for foreclosure of his deed of trust lien. He alleged that appellee had violated a covenant in the deed of trust in that he had failed to maintain insurance against the property in question.

On January 30, 1961 appellee filed a motion for summary judgment in his favor in his suit for injunction.

On January 31, 1961 appellant took a default judgment on his cross-action against appellee Westbrook. Appellee had not filed an answer to appellant's cross-action. The default judgment was for $1,591.75 and foreclosure of the deed of trust lien.

On February 8, 1961 appellant filed a motion asking that the default judgment be made final. The grounds were that appellee's suit for injunction had become moot.

On February 10, 1961 appellee filed his supplemental petition and a motion asking that the default judgment be set aside, and that the appellant's motion to make the default judgment final be overruled.

Also on February 10, 1961 the court set aside the default judgment of January 31, 1961, and overruled appellant's motion to make said judgment final. On the same day the court granted appellee a summary judgment in appellee's original suit for injunction. The order permanently enjoined appellant from foreclosing his alleged lien. Appellant's cross-action remained pending.

On March 14, 1961 appellee filed a motion for summary judgment against appellant on appellant's cross-action.

On April 28, 1961 the court rendered final judgment. Appellee's motion for summary judgment against appellant on appellant's cross-action was sustained. Judgment in favor of appellee in his injunction suit was included in this final judgment.

### FACTS

Appellee Westbrook is a building contractor. Appellant Kemp is in the lumber business. On August 24, 1960 appellee executed a note and deed of trust for $15,000 payable to appellant 120 days after date with interest at 7%. These instruments

were executed by appellee to provide interim financing for the construction by appellee of a house for sale. Soon after their execution appellant assigned the note and deed of trust to the Republic National Bank in Dallas as collateral.

The deed of trust provided that appellee should maintain insurance on the property. Default in that respect would give appellant a right to foreclosure. Also appellant as mortgagee was authorized to keep the property insured at appellee's expense should appellee fail to maintain insurance.

Pursuant to the terms of the deed of trust appellee obtained a builder's risk insurance policy from Employers Casualty Company. This was satisfactory to appellant and the Bank. The policy or a certificate thereof was turned over to appellant.

On October 28, 1960 Employers Casualty Company addressed letters to appellant, appellee and the Bank respectively, notifying them that the policy of insurance would be cancelled ten days from receipt of the notice. Appellee did not receive his letter. It was returned undelivered to Employers Casualty Company.

The notice requested return of the policy to the insurance company. Accordingly appellant returned the policy. He has not had it in his possession since that time.

Meantime appellee in a telephone conversation with appellant on a Saturday, learned of the letter of notification. The following Monday he conferred with the sales manager of the insurance company. The letter had been sent because of the company's dissatisfaction in regard to the payment of premiums on other insurance policies not here involved. A satisfactory adjustment of the matter was affected. The insurance was not cancelled. The sales manager of Employers Casualty Company informed appellant Kemp by telephone that the company had revoked its notice of cancellation. All this took place within the 10 day period stipulated in the letters. Ordinarily the insurance company

confirms by letter its verbal revocation of a notice to cancel, but in this instance, through oversight, it did not do so. The policy was not returned to appellant. However it is undisputed that appellant received actual notice that the letter of cancellation had been revoked and that the insurance was still in effect. Appellant was so informed "on a day closely following the notice of cancellation". The quoted words are those of the sales manager of the insurance company.

Soon after receipt of the letter notifying him that the insurance would be cancelled ten days after receipt of the notice, appellant Kemp made arrangements for insurance with another company. He obligated himself for an insurance premium of $12.88.

Meantime appellee proceeded with construction of the house. He did not draw the full amount of $15,000 from appellant. During the period of the construction he drew sums of money from time to time against the note, the total of the sums thus advanced, at different times, by appellant amounting to $13,650.86.

On November 15, 1960 appellant's attorney, who was the Trustee named in the deed of trust, wrote to appellee informing him that notices of trustee's sale were being posted. The sale was to be held December 6, 1960. The grounds for foreclosure were appellee's alleged failure to maintain insurance. Appellee filed suit and was granted a temporary injunction on December 15, 1960. It was in this suit that appellant later filed a cross-action for debt and foreclosure, including attorney's fees.

Appellee finished construction of the house and found a purchaser. The sale was closed and the sale papers signed in the office of American Title Company. In connection with the closing of the sale request was made of appellant for the exact amount including interest due on the note. Appellant referred the inquiry to his, appellant's, attorney. The figure furnished

by the attorney was $13,650.86 principal plus $243.60 interest as of December 12, 1960. Harry R. Shawver, Jr. attorney for the title company says he confirmed this figure in a telephone conversation with appellant's attorney. So far as the record shows appellant did not say anything about his claim for $12.88, the premium for the insurance he took out after he received the notice of intention to cancel appellee's insurance. The sale was completed a few days later and the sum of $2.65 per day for seven days was added as interest. A check, dated December 17, 1960 for $13,913.10 was sent to appellant. This check was received by appellant on December 20, 1960. The check was cashed by appellant on December 30, 1960, seven days after he filed his cross-action for foreclosure.

## OPINION

■ In his first and second points on appeal appellant asserts that (1) mailing notices of cancellation to the insured and the mortgagee, and surrender of the policy by the mortgagee pursuant thereto effected cancellation, therefore (2) under the terms of the note and deed of trust lien the mortgagee, Kemp, was authorized to accelerate maturity and proceed to foreclosure.

We do not agree with appellant. The letter of notification is not copied in full into the record. However George H. Measley, Sales Manager of Employers Casualty Company, testifying at the hearing December 15, 1960, quoted the material part of the letter as follows: "* * * the Employers Casualty Company hereby notifies you that the above captioned policy *will be cancelled ten days from receipt of this notice.*" (Emphasis ours.) This testimony is in effect corroborated by appellant himself. In a controverting affidavit appellant stated, "On 28 October 1960 Employers Casualty Company notified me that the policy *would be cancelled ten days from receipt of the notice.*" (Emphasis ours.)

From the above wording it is apparent that the insurance company did not by its letter of notification actually cancel the insurance as of the date of the notice, October 28, 1960. The letter notified appellant that the insurance company was going to cancel the insurance ten days after receipt of the letter. As it turned out the company after a conference with appellee changed its mind. The notice was revoked before the ten day period had expired. We know of no reason why the insurance company could not revoke its notice within the ten day period named in the notice. By telephone appellant received actual notice from the insurance company of the revocation of the notice. The insurance was never cancelled.

In this connection we quote from the testimony of Measley, the Sales Manager, given December 15, 1960:

"A I talked to Mr. Kemp on the phone, explained that we had sent out notice and that we were going to put it back in force, and he advised me that they had secured another policy, which still didn't change my situation with what I had to do, and his reasons, beyond what his problems were, I don't know.

\* \* \* \* \* \*

"Q And you notified him that this policy was in effect, and was going to stay in effect, then?

\* \* \* \* \* \*

"Q But you told him over the phone you were revoking the cancellation?

"A Yes."

We quote also from Measley's affidavit executed June 1, 1961:

"Joe Westbrook made satisfactory arrangements with me for the payment of such premium on the other policies and that as a result instructions were issued to revoke the notice of cancellation. That such was done within the ten day period set forth in the notice of cancellation and that inasfar as Em-

ployers Casualty Insurance Company is concerned said policy was never cancelled and has at all times remained in full force and effect. * * * furthermore I notified Mr. Kemp of Kemp Lumber Company by telephone conversation *on a day closely following the notice of cancellation that such matter had been attended to by Mr. Westbrook and that the policy had not been cancelled.* That Employers Casualty Insurance Company stands ready to comply with any and all demands which may or might arise by virtue of the contract of insurance with Joe Westbrook and the records of such company in no way reflect that such policy was ever cancelled at any time from the date of its inception." (Emphasis ours.)

Appellant contends that the mere sending of the notice had the effect, under the terms of the policy, of cancelling the insurance. If the policy so provided it is apparent that the insurance company did not avail itself of such provision. The language of the letter of notification states what the company "will do" on a certain named date in the future. The door was left open for a change of intention.

In support of his contention appellant cites these cases: The Insurance Company of Texas v. Parmelee, Tex.Civ.App., 274 S.W.2d 944; Texas Cas. Insurance Co. v. McDonald, Tex.Civ.App., 269 S.W.2d 456; Duff v. Secured Fire & Marine Ins. Co., Tex.Civ.App., 227 S.W.2d 257; Gulf Ins. Co. v. Riddle, Tex.Civ.App., 199 S.W.2d 1000; Aetna Ins. Co. v. Aviritt et al., Tex. Civ.App., 199 S.W.2d 662; Frontier-Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co., Tex.Civ.App., 166 S.W.2d 746; California-Western States Life Ins. Co. v. Williams, Tex.Civ.App., 120 S.W.2d 844; Hall v. Miller, Tex.Civ.App., 268 S.W. 268.

None of these cases cited by appellant is in point here. In none of them was the notice of cancellation revoked by the insurer before the expiration of the time limit

named in the notice. In some of the cases it is held that the notice itself is effective as a notice if properly mailed, though never received by the insured. But in none of them is it held that the cancellation itself became effective prior to the date set for cancellation in the notice, or that the notice of cancellation cannot be revoked prior to the date named for the cancellation.

Appellant's first two points are overruled.

■ In his third and fourth points appellant says that (3) the mailing of an ordinary check by a stranger to the mortgage transaction after it is in litigation is not a sufficient tender; and (4) even a good tender of less than principal and interest owing will not prevent the note from being in default for nonpayment at maturity, and when it is in litigation and judgment is sought thereon and for foreclosure, contractual attorney's fees are payable.

After a careful consideration of the record in this case we have concluded that the above points should be overruled. Appellant says that a tender of payment by check is not a good tender. That question is not an issue in this case, for appellant accepted the check sent to him by the title company and on December 30, 1960 cashed said check. He cannot be allowed to cash the check, keep the money, and then repudiate payment because of the form in which it was made. He will not now be heard to complain that payment was made in the form of a check. Nicewarner v. Alston, Tex.Civ.App., 228 S.W.2d 872; Pitts v. G. F. C. Corp., Tex. Civ.App., 228 S.W.2d 261; Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, 164 S.W.2d 488; 40 Tex.Jur. 852; 86 C.J.S. Tender § 23, p. 569.

■ Appellant also contends that the check which he received and which he cashed was for a lesser amount than the debt due. He says that it did not include enough interest, and did not include any attorney's fees.

It is to be remembered that the sum borrowed from appellant, $13,650.86, was not advanced in one lump sum. It was paid over to him in lesser amounts from time to time as work proceeded in the construction of the house. The record is silent as to the specific dates when appellee drew payments on the note. Interest started running on each advance as it was made, not on the full amount of $15,000 from the date of note, and not on the total amount of $13,650.86 from the date of the note. But the exact dates of the advances are not material to our decision. For it is undisputed that when the Title Company was ready to close the deal for the sale of the house, inquiry was made as to the amount including interest, and appellant through his attorney gave the figure as $13,650.86 plus interest of $243.60 as of December 12, 1960. Shawver added seven days additional interest at $2.65 per day, a total additional interest of $18.55. This made a total amount due appellant of $13,913.01. A check dated December 17, 1960 in the latter amount was mailed to appellant. This is the check appellant received December 20, 1960, kept and cashed December 30, 1960. In view of these circumstances appellant will not be heard to complain that the amount was not correct. Young v. Fitts, 138 Tex. 136, 157 S.W.2d 873; Jacobs v. Ludwig, Tex.Civ. App., 99 S.W.2d 416.

■ We do not consider American Title Company a stranger to this transaction. It had prepared the original note and mortgage from appellee to appellant as well as a binder in regard to Westbrook. It was issuing a title policy on the property. It was interested in seeing that the full amount due to appellant was paid so as to obtain a release of the lien. It is common knowledge that title companies act as agents for debtors in disbursing money to lien holders inclosing real estate sales of property on which they issue title policies. Appellant could not question the source of the money paid in satisfaction of appellee's note and deed of trust. Wischkaemper v. Massey, Tex.Civ.App., 70 S.W.2d 771.

In his fifth point appellant alleges that in passing on his cross-action the court wrongfully gave summary judgment that the mortgagee take nothing when a portion of the debt secured remained unpaid.

Again we are unable to agree with appellant for the undisputed facts negative appellant's assertion that a portion of the debt remained unpaid. In his brief appellant contends that interest on $13,650.86 should be computed from the date of the note August 24, 1960. Therefore the check of December 17, 1960 to appellant in the amount of $13,913.01 was $42.81 short as to interest. In our opinion, as we have already stated, money advanced by appellant to appellee from time to time should draw interest only from the date of each advance. These dates are not shown, but the dates become immaterial in view of the fact that appellant himself through his attorney furnished the figures which the Title Company and appellee accepted and relied on as to the correct amount due appellant on December 12, 1960. To this amount the title company added seven days interest in its check of December 17, 1960. There was no shortage in the amount of the check.

Appellant also takes the view that attorney's fees of 10% should have been added because, according to appellant, the note was in default on December 22, 1960 the date of maturity. To this we cannot agree because the undisputed evidence shows that there was no default on December 22, 1960. Appellant's fifth point is overruled.

■ In his brief appellant argues that it was proper for the court to render default judgment January 31, 1961 in appellant's favor on appellant's cross-action since appellee had not filed an answer to the cross-action. There is no merit to this argument. Appellee's petition constituted an answer to appellant's cross-action. Jones v. Kelley, Tex.Civ.App., 91 S.W.2d 969, 973; Overland Automobile Company v. Cleveland, Tex.Civ.App., 250 S.W. 453; Taylor v. Ward, Tex.Civ.App., 102 S.W. 465.

The judgment of the trial court is affirmed.

## ON REHEARING

In his motion for rehearing appellant says that in asking for an injunction against appellant, appellee himself pled his own execution of a $15,000 note without pleading any credits or any showing of a lesser amount due than the full $15,000 named in the note. Then later he directed American Title Company to pay "the entire sum owing by virtue of the terms of the note", yet only the sum of $13,913.01 was actually tendered to appellant. This raises a fact issue, according to appellant. The record also discloses that appellant in his unsworn cross-action asking foreclosure of his deed of trust lien also pled the $15,000 without alleging any credits or lesser amount due.

However in appellee's First Amended Supplemental Petition answering appellant's cross-action appellee does plead a lesser amount due. We quote from appellee's sworn pleading:

"Plaintiff would show the court that a hearing was held in this matter by this court on December 15th, 1960, at which time defendant admitted that only $13,650.86 had been drawn by plaintiff on his note executed to defendant KEMP in the sum of $15,000.00, and that only that sum plus interest was due. * * * That two days later plaintiff, through his agent, American Title Company of Dallas, sent the said sum plus interest to defendant KEMP which was received in due course of business on December 20, 1960, and that in the course of business KEMP LUMBER COMPANY cashed said sum on December 30, 1960, and has had the use and benefit of said sum of money since prior to the maturity of the note in question. That it is the custom and usage of the trade, where a lumber company is involved in interim financing, as was the case here, that the only sum to be charged to the

payor of the note is the amount allowed to be drawn on said note by the financial institution or lumber company advancing said money, plus agreed interest. That here plaintiff borrowed only $13,650.00 on said $15,000.00 note and that the title company check of American Title Company duly cashed by said defendant KEMP LUMBER COMPANY was full payment for all sums advanced by said defendant to said plaintiff.

"Plaintiff would show in the alternative, in the event that his plea of payment is not sufficient in law, that there is a failure of consideration on the part of defendant since plaintiff did not receive the agreed sum of $15,000.00 under the note and deed of trust executed by him.

"Plaintiff would show the court that in the alternative, that in the event his plea of payment is not sufficient under law that he has set-off between the sum of $13,650.00 and $15,000.00 for sums which he did not draw which under the terms of the agreement under the note he was entitled to from defendant.

"Plaintiff executed the deed of trust to defendant in connection with the $15,000.00 note and although defendant has accepted and used plaintiff's money in payment thereof, he refused and still refuses to execute a release of lien and plaintiff prays that this court order defendant to execute the release and return same to the American Title Company for recordation."

■■ We of course may not and shall not look to the pleadings as evidence of the truth of their own allegations. We quote from the pleadings merely to show that appellee pled defenses which entitled him to adduce evidence of an amount due less than the $15,000 named in the note.

It is undisputed that appellant advanced and loaned to appellee only the sum of

$13,650.86, not the full amount of $15,000 called for by the note. Appellee so swore in a supporting affidavit, dated March 14, 1961 and drawn in the form prescribed by Rule 166-A(e) Texas Rules Civ. Procedure. Appellant nowhere denies or contradicts said sworn statement. In fact on the second page of his brief on appeal appellant admits the truth of appellee's statement. We quote from appellant's brief:

"The transaction was to finance Westbrook in building a house for sale, and it is undisputed that Westbrook only drew $13,650.86, * * *."

In his supporting affidavit appellee further swore as follows:

"That when I executed the note and deed of trust to KEMP LUMBER COMPANY in the sum of $15,000.00 for interim financing in connection with the construction of a house on the lot described in my previous affidavit, that it was my agreement that all I would owe of the $15,000.00 to CHARLES W. KEMP, d/b/a KEMP LUMBER COMPANY, cross-plaintiff in this action, was the sum of money that I actually borrowed from him plus interest, not to exceed $15,-000.00. That during the period of construction from time to time I borrowed certain sums of money that the total amount borrowed was $13,650.85, * * and that I instructed said title company to pay said sum plus any additional interest owed to fully pay off all sums borrowed as agreed from CHARLES W. KEMP."

■ Appellant later on March 28, 1961, filed a controverting affidavit but he did not deny the above quoted averments in appellee's affidavit. Having failed to controvert appellee's affidavit in this particular, appellee's statement must be accepted as true without dispute. Quarles v. Traders & General Ins. Co., Tex.Civ.App., 340 S.W.2d 545; American Motors Acceptance Corp. v. Heckerman, Tex.Civ.App., 332 S.W.2d 345; Sandone v. Dallas Osteopathic Hospital, Tex.Civ.App., 331 S.W.2d 476; Baxter v. Beaupre, Tex.Civ.App., 295 S.W.2d 718.

In Foxworth-Galbraith Lumber Co. v. Southwestern Contracting Corp., Tex.Civ. App., 165 S.W.2d 221, a fact situation arose similar in many respects to the situation here; and the court there held that "parties may make a note and deed of trust for a definite amount, on agreement that some or all of the money will be advanced at a later date; and that in such event the holder of the note and mortgage will have a valid lien to secure the amount of the money actually advanced, provided that it does not exceed the amount stipulated in the original note and mortgage, *even though the mortgage does not expressly provide that it shall secure future advances.*" (Emphasis ours.)

Harry W. Shawver, attorney for American Title Company, testified in court at the time of the hearing on the temporary injunction. The court later took this testimony into consideration in passing on the motion for summary judgment. We quote from Shawver's testimony:

"Q  Is the American Title Company in a position at this time to pay off in full the note held by Kemp, Mr. Kemp doing business as Kemp Lumber Company?

"A  It is.

"Q  The principal and interest?

"A  It is.

"Q  Do you know what that figure is?

"A  Yes, sir; I do.

"A  These figures that I had written, given to me, were confirmed day before yesterday by Mr. William Andress, Jr., on the telephone, by myself. * * *

"A  I called Mr. Kemp and he would not give me a figure. It is cus-

tomary for us to call the holder of the note at the time it is ready to be paid off, what the principal and interest balance is, * * * we send the release to them, along with the check in the amount they have given us over the telephone; however, Mr. Kemp did not give me a figure. He said to call his attorney and trustee, William Andress, Jr. I did not call Mr. Andress, but my secretary did. I confirmed later these figures that had been given me. * * *

"Q All right, sir, what are those figures?

"A The principal amount is thirteen thousand six hundred fifty dollars and eighty-six cents; the interest, two hundred forty-three dollars and sixty cents, as of December 2, 1960.

"Q All right, sir. Have you computed what the interest would be to date?

"A I have. At seven per cent interest—today is the fifteenth of December—for three days at two dollars and sixty-five cents per day, seven dollars and ninety-five cents, in addition to two hundred forty-three sixty.

"Q Is the American Title Company prepared at this time to pay Mr. Kemp in full, on the principal and interest of his note?

"A It is."

Later Shawver made an affidavit which is attached to the motion for summary judgment in support thereof. In this supporting affidavit Shawver reiterates in substance the matters to which he earlier testified as above quoted.

In his controverting affidavit appellant does not deny the statements made by Shawver in this testimony and in his supporting affidavit. Nowhere does appellant's attorney deny that he furnished Shawver the figures which Shawver accepted as the amount due appellant. Therefore Shaw-

ver's testimony and affidavit must be accepted as true.

It is undisputed that Shawver sent appellant a check for $13,913.01 together with a release to be signed by appellant. The latter kept the check a few days, then cashed it. But he did not execute and return the release.

In his controverting affidavit appellant says that the check was not tendered in full satisfaction of the note. This statement is made with reference to a matter to which appellant is hardly competent to testify, and is an allegation which is conclusively repudiated by the undisputed facts in connection with the check as hereinbefore set out, which facts appellant does not deny.

Appellant also states in his controverting affidavit that the amount of the check was "substantially insufficient" to pay the principal and interest accrued on the note. In the light of the undisputed facts this broad, general statement is in the nature of an erroneous conclusion. We repeat that nowhere does appellant deny Shawver's testimony and his supporting affidavit that Shawver, acting as appellee's agent in closing the sale of the property, was referred by appellant to his, appellant's attorney to obtain correct information as to the amount due. Nowhere does appellant plead accident or mistake on his or his attorney's part with reference to the correctness of the amount named by the attorney, which amount was used by Shawver in making out the check. We think that appellant, having authorized his attorney to furnish the figures in question, cannot now, in the absence of any plea of fraud, accident or mistake, create an issue of fact with reference to the matter. Appellant under the undisputed facts is bound by his own figures.

Appellant stresses the fact that the insurance policy was not returned to him. It is undisputed that appellee Westbrook made satisfactory arrangements with Employers Casualty Company so that the latter never

898

did carry out its announced intention to cancel the insurance ten days from receipt of notice. It is further undisputed that appellant had actual notice and knowledge that Westbrook and the insurance company had made arrangements whereby the insurance was not to be cancelled. Thus Westbrook beyond dispute performed his obligations to take out and maintain insurance on the house under construction.

■ Of course Employers Casualty Company was guilty of carelessness in failing to return the policy. But its failure to return the policy did not invalidate the insurance contract. Under the circumstances actual manual possession of the policy by the insured was not necessary to make the insurance contract valid and enforceable. Denton v. Kansas City Life Ins. Co., Tex. Civ.App., 231 S.W. 436; 44 C.J.S. Insurance § 265, p. 1055; 29 Am.Jur. 603, 605.

Appellant's motion for rehearing is overruled.