**PLAINS INSURANCE COMPANY,**
Appellant,

v.

Isaias ACUNA, Appellee.

No. 5578.

Court of Civil Appeals of Texas,
Eastland.

March 26, 1981.

Ray Weed and Rene R. Barrientos, Groce, Locke & Hebdon, San Antonio, for appellant.

Mark Smith, Lubbock, for appellee.

RALEIGH BROWN, Justice.

This is a worker's compensation venue case. Isaias Acuna brought suit in Maverick County for an injury occurring in Lubbock County. Plains Insurance Company filed a motion to transfer the cause to Lubbock County, alleging that the accident occurred there and Acuna resided there at the time of injury. The trial court entered an interlocutory order overruling Plains' motion. Plains Insurance Company appeals. We reverse and render.

Tex.Rev.Civ.Stat.Ann. art. 8307 § 5 (Rev. 1977), in setting out the county or counties in which suit may be filed when appealing an award of the Industrial Accident Board, provides in part:

> ... Any interested party who is not willing and does not consent to abide by the final rulings (of the Industrial Accident Board) shall ... bring suit in the county where the injury occurred or in the county where the employee resided at the time the injury occurred ... (Amended effective August 29, 1977).

It is undisputed that the alleged accident occurred November 3, 1977, in Lubbock County. Plains contends, therefore, that "the sole issue in this appeal is whether there is probative evidence that plaintiff resided in Maverick County on November 3, 1977, the time of the Lubbock County accident."

We must determine if there is probative evidence to support the trial court's implied finding that Acuna resided in Maverick County on November 3, 1977. In reviewing no evidence points, we consider only the evidence which supports the trial court's finding. *Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299 (Tex.1963).

Offered as proof of Acuna's residence at the time of the accident was Acuna's original petition, the Industrial Accident Board award, notice of his intention to appeal, the notice of injury received by the Industrial Accident Board within three weeks of the injury, and Acuna's deposition.

Although allegations of residency in a petition constitute no evidence thereof, we note that Acuna's original petition alleges only that he was a resident of Maverick County on January 26, 1979, when the petition was filed, not on November 3, 1977, the time of the injury. *Locke v. Brenneman*, 459 S.W.2d 871 (Tex.Civ.App.-Waco 1970) rev'd, 466 S.W.2d 93 (Tex.Civ.App.-Waco 1971, no writ); *Kemp v. Westbrook*, 358 S.W.2d 889 (Tex.Civ.App.-Dallas 1962, writ ref'd n. r. e.). The award lists Acuna's address as "121 North Detroit, Lubbock, Texas 79415." His notice of appeal does not list an address for Acuna or even mention Maverick County. The notice of injury gave Acuna's address as "Route 2, Box 33, Lubbock, Texas."

Acuna's deposition testimony, which was uncontested, was that he had lived in Lubbock for three years and at all times while working for Lawson Feed Lots, his employer at the time of injury. Mrs. Acuna lived with him during those three years which involved the period before, during, and after the accident. Acuna and his wife

lived in a house across the street from Lawson Feed Lots, and he walked to work. Upon release from the hospital, Acuna returned to the same house. He continued to live in Lubbock.

Acuna testified that he was living in Lubbock when he hired his attorney to file his compensation claim for the injury. His driver's license gave a Lubbock address, he purchased a car in Lubbock and his car title contained a Lubbock address.

The court in *Mills v. Bartlett*, 377 S.W.2d 636 (Tex.1964) discussing "residence" said:

The term "residence" is an elastic one and is extremely difficult to define. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile. *Owens v. Stovall*, Tex.Civ.App., 64 S.W.2d 360, writ refused; *Prince v. Inman*, Tex.Civ.App., 280 S.W.2d 779, no writ history; *In re Garneau*, 7 Cir., 127 F. 677, 679.

\* \* \* \* \* \*

Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined.

We hold as a matter of law that Acuna's residence was Lubbock County at the time of the injury.

■ It is settled law in Texas that for venue purposes a person may have a residence in two or more counties. *Snyder v. Pitts*, 150 Tex. 407, 241 S.W.2d 136 (1951); *Kerr v. Davenport*, 233 S.W.2d 197 (Tex. Civ.App.-San Antonio 1950, no writ). Therefore, we must determine if there is evidence to support an implied finding that Acuna had a second residence in Maverick County on November 3, 1977.

■ The court in *Snyder*, supra, said:

A second residence away from a domicile must include the following elements:

1. A fixed place of abode within the possession of the defendant
2. occupied or intended to be occupied consistently over a substantial period of time
3. which is permanent rather than temporary.

Acuna testified that he was born in Mexico and lived there until 1973. Twice before 1973 he worked in the United States on a work permit. In 1973 he worked for Del Monte five to six weeks in Crystal City, which is in Zavala county. He then worked temporarily in Ohio picking tomatoes and cucumbers. Acuna testified:

Q  You came to work in Lubbock in 1974?

A  I came back to Eagle Pass, and, then, from Eagle Pass I came over here to Lubbock.

Q  What were you doing in Eagle Pass?

A  We would just go down there to stay for a couple of days, and, then, we would come over.

After coming to Lubbock in 1974, Acuna worked in a junkyard and for Galbraith Steel. He then testified:

Q  After you stopped working at Galbraith Steel, where did you go to work?

A  After Galbraith Steel, I don't remember. It seems like we were over to Eagle Pass.

Q  How long did you stay in Eagle Pass?

A  I don't remember, but we were over there several months.

Q  Were you working?

A  No.

Q  What were you doing?

A  In those days, I wasn't working. We would just go over there.

Q  Were you visiting relatives?

A  No, we would just go over there, and we had this house, little house that we had rented, and we had it rented, and, so, we would just go over there, and live there for a while.

Q  Did you rent that house after you stopped working at Galbraith Steel?

A Yes.

Q In other words, you rented the house while you were staying in Eagle Pass?

A Yes.

Q Now, you say you stayed there for several months. Where did you go after that?

A From Eagle Pass?

Q Yes.

A Well, I would go out and work. I came back here to work, too.

Q Where did you work here, again?

A Work was a contractor, building homes.

Q Who was that?

A His name is Pablo Aguilar.

Q Do you recall when that was?

A I don't remember the exact date of that year when I came to work over here.

Q What year was it?

A It was around in 1976, around there.

Q Where were you in '75?

A I would go out and work out somewhere else. I went to work in somewhere in Louisiana, too.

Q Did your wife go with you each time?

A No, sometimes she would stay back there in Eagle Pass.

Q Sometimes she would move with you from place to place though, wouldn't she?

A Yes.

Q Now, in '76, when you were back here in Lubbock, did your wife come with you, move with you?

A Yes.

Q How long did you work for Mr. Aguilar as a builder's helper?

A Well, I don't remember, but it was around eight or nine months.

Q When you stopped working for him, was that in '76 or '77?

A In '76, and '77—I don't remember the exact date. It was—I just don't remember the exact date.

Q After you stopped working for Mr. Augilar, who did you go to work for?

A It was another one that's named Daniel.

Q Another builder?

A Yes.

Q Was that here in Lubbock, too?

A Yes.

Q How long did you work for him?

A Just a few months.

Q I guess, then, while you worked for these two builders that you had a house here in Lubbock, didn't you?

A I was staying with some cousins. I have some relatives here.

Q You didn't have any other house at the time, though did you?

A No, we were staying with those cousins.

Q Now, after working for this second builder here in Lubbock, who did you go to work for next?

A That was when I quit working with Daniel, is that correct?

Q Yes.

A I don't remember who I went with in those days. I don't remember.

Q When did you go to work for Lawson Feed Lots?

A I don't remember exactly the date. I don't know; I don't remember if it was in that same year of '76 or '77. I am not too sure.

Q Did you work for anybody in between the time that you worked for Daniel, and when you went to work at Lawson Feed Lots?

A No.

Q Now, when you went to work for Lawson Feed Lots, where were you staying?

A There, with those cousins.

Q And where did those cousins live?

A There on Detroit, 121.

Q Now, how long did you stay there with those cousins?

A I don't remember because when I started working there at the farm, I moved over to the farm.

Q In other words, when you started working for Lawson Feed Lots, you moved over to a house, you and your wife did, by the feed lots?

A Yes.

Q Was that right across the road from the feed lots?

A Yes.

Q Did you work for Lawson Feed Lots for several months?

A Yes, I worked for them, I think, close to a year.

Q While you were working for them, did you live in that house, then, across the road from the feed lots?

A Yes, when I started working there, I moved over there to that—there, across the street, and lived there.

Q You moved over from where you were living with your cousins on Detroit Street here in Lubbock, is that right?

A Yes.

Q I guess it would be fair to say, you just moved from one place in Lubbock, to another place in Lubbock, is that right?

A Yes.

After his injury, Acuna continued to live at the house across from the feed lot until he moved to his cousin's house on Detroit Street in Lubbock. Then he testified:

Q So, you decided to move from Lubbock, then, to Eagle Pass, is that correct?

A Yes, because—well, that's the place where we always move back to.

Q You move from place to place, don't you?

A Well, yes, when I go out and work somewhere.

Q So, you moved back to Eagle Pass in 1978, didn't you?

A No, I don't think it was in '78.

Q When was it?

A I think it was in '79. It wasn't in—I think it was—I don't think it was in '78.

Q It was in '79?

A I think it was in '79.

We hold that there is no evidence that Acuna had a fixed place of abode within his possession on November 3, 1977, in Maverick County which was permanent rather than temporary. The trial court, therefore, erred in making an implied finding that Acuna had a second residence in Maverick County on the date of injury.

■ Acuna argues that the proper vehicle for challenging venue in this worker's compensation case is by plea of privilege, rather than by motion to transfer. We disagree.

This court in *Texas Employers' Ins. Ass'n v. Ribble*, 260 S.W.2d 719 (Tex.Civ.App.-Eastland 1953, no writ) held that under Article 8703a:

That the requirement that such suits be filed in the county where the injury occurred is a matter of venue rather than jurisdiction.

\* \* \* \* \* \*

And the procedure for determining same, is controlled by the statute itself rather than by Article 1995.

\* \* \* \* \* \*

Article 8307a, supra, provides that the court, "upon ascertaining that it does not have jurisdiction" shall transfer the case to the county where the injury occurred. The burden is on the claimant to establish that the injury occurred in the county in which suit is pending. Where suit is brought in a county other than where the injury occurred and the matter is timely brought to the court's attention, it is the duty of the court, *on its own motion, or the motion of either party*, to transfer the case to the proper county. (Emphasis added)

See also *Texas Employers' Insurance Association v. Jones*, 580 S.W.2d 889 (Tex.Civ. App.-Eastland 1979, no writ); *Commercial Standard Insurance Company v. Lester*, 481 S.W.2d 157 (Tex.Civ.App.-Beaumont 1972, no writ); *Traders & General Ins. Co. v. Curby*, 103 S.W.2d 398 (Tex.Civ.App.-Waco

1937, no writ); Muldrow, Workers' Compensation, 34 Sw.L.J. 323 at 352 (1980). We disagree with *Reyes v. Texas Employers' Insurance Association*, 581 S.W.2d 268 (Tex. Civ.App.-Waco 1979, writ dism'd), which appears to hold that a plea of privilege is the only proper vehicle to challenge venue in this type case. See also *Reyes v. Texas Employers' Insurance Association*, 599 S.W.2d 838 (Tex.Civ.App.-San Antonio 1980, writ ref'd n. r. e.).

We hold, therefore, that the trial court erred in not transferring the present cause to Lubbock County, the county where the injury occurred and the county where Acuna resided at the time of the injury.

We reverse and render the cause. We order the cause to be transferred to a district court in Lubbock County.