

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00103-CV

TEXAS ETHICS COMMISSION             APPELLANT AND APPELLEE

V.

MICHAEL QUINN SULLIVAN             APPELLEE AND APPELLANT

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 14-06508-16

----------

## MEMORANDUM OPINION[1]

----------

In this appeal, we are asked to determine the appropriate venue for an administrative respondent's appeal by trial de novo of a state agency's final administrative decision. We conclude that venue of the administrative respondent's appeal by trial de novo was mandatorily set in Travis County because the administrative respondent failed to proffer prima facie proof that he

---

[1]*See* Tex. R. App. P. 47.4.

resided in Denton County at the time the cause of action accrued. Because the trial court concluded otherwise, we reverse the trial court's order denying the state agency's motion to transfer venue and remand for further proceedings.

## I. BACKGROUND

### A. ADMINISTRATIVE ENFORCEMENT ACTION

Michael Quinn Sullivan is the president of Empower Texans, a self-described "new media," nonprofit corporation located in Austin that seeks to "educate citizens about actions and activities of Texas elected officials" by scoring them based on a "fiscal responsibility index." The Texas Ethics Commission (the TEC) is a constitutionally created state agency, which is part of the legislative branch of Texas government, that is charged with administering and enforcing statutes governing elections and related governmental processes. *See* Tex. Const. art. III, § 24a; Tex. Gov't Code Ann. § 305.035(a) (West 2013), §§ 571.001, 571.061 (West 2012).

In March 2012, two members of the Texas House of Representatives filed sworn complaints against Sullivan with the TEC, alleging that Sullivan received compensation for directly contacting legislators, on behalf of Empower Texans, to influence specific legislation in 2010 and 2011 and that Sullivan had failed to register as required by the lobbyist-registration laws. *See* Tex. Gov't Code Ann. §§ 305.003(b), 305.035(c) (West 2013); *see also id.* §§ 305.035(a), 571.061(a)(1), 571.122 (West 2012) (empowering the TEC to administer and enforce lobbyist-registration requirement upon filed, sworn complaint). The TEC

2

held a formal hearing and issued a unanimous, final decision on July 21, 2014, concluding that Sullivan twice had failed to register as a professional lobbyist, even though he directly communicated with legislators on behalf of Empower Texans to influence specific legislative action, and assessing a $10,000 civil fine. *See id.* § 305.032 (West 2013), §§ 571.132, 571.173 (West 2012). Sullivan received the final decision the same day it was issued.

## B. APPEAL BY TRIAL DE NOVO

On August 22, 2014, Sullivan appealed the TEC's final decision by filing a petition in a district court in Denton County, where he alleged he resided. *See id.* § 571.133(a) (West 2012). Sullivan alleged that his "cause of action" was a "de novo appeal of the [TEC's] July 21, 2014 Final Order pursuant to Tex. Gov't. Code § 571.133." The presiding, district-court judge was Judge Steve Burgess. As a result of Sullivan's petition, the TEC's final decision was automatically vacated. *See id.* § 2001.176(b)(3) (West 2008).

The TEC filed a motion to transfer venue to Travis County, supported by the affidavits of the TEC's executive director and an investigator hired by the TEC, alleging that Sullivan resided in Travis County and that mandatory venue, therefore, lay in Travis County. *See id.* § 571.133(a); Tex. R. Civ. P. 86.1, 87.3(a), 88. The TEC's executive director attached to her affidavit four different lawsuits filed by Sullivan against the TEC and its individual commissioners, relying on venue statements he made in those pleadings to support the TEC's assertion that Sullivan resided in Travis County. These lawsuits were not

3

considered by the TEC during its administrative enforcement action. The executive director also verified and attached the TEC's final decision against Sullivan. In response, Sullivan attached his affidavit in which he averred that he is a resident of Denton County. Although Sullivan objected to the investigator's affidavit,[2] he did not object to the executive director's affidavit or her attachments in his response to the TEC's motion to transfer venue. In its reply in support of its venue arguments, the TEC attached more evidence purporting to show that Sullivan resided in Travis County, none of which was a part of the underlying administrative enforcement proceeding.

Sullivan then filed an agreed motion to realign the parties because the TEC "still bears the burden of proof in this case," which Judge Burgess granted. *See* Tex. Gov't Code Ann. § 571.129 (West 2012) (specifying the TEC must determine violation by a preponderance of the evidence). The TEC filed a "First Amended Pleading as Realigned Plaintiff" and asserted that Sullivan failed to register as a lobbyist in 2010 and 2011 as statutorily required.

Sullivan then filed a motion to dismiss the TEC's failure-to-register claim, arguing that the TEC violated the Texas Citizens' Participation Act (the TCPA),

---

[2]There is no indication in the record that Judge Burgess expressly ruled on Sullivan's objection to the affidavit, but Judge Burgess stated in his order denying the TEC's motion that it considered all the pleadings on file. This was an implicit overruling of Sullivan's objection. *Cf. Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied) (holding order granting summary judgment implicitly sustained movant's objections to nonmovant's affidavits). No party on appeal argues that the investigator's affidavit, which was not submitted during the administrative enforcement action, may not be considered in our review.

4

an anti-SLAPP statute,[3] by filing a legal action based on Sullivan's exercise of his First Amendment rights.[4]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003 (West 2015).   Sullivan also requested attorneys' fees, court costs, and sanctions against the TEC.  *See id.* § 27.009(a) (West 2015).

On February 18, 2015, Judge Burgess held a hearing on the venue and dismissal motions, signed an order denying the motion to transfer venue, and orally granted the motion to dismiss.  Five days later on February 23, 2015, the TEC filed a motion to recuse Judge Burgess, arguing that on the evening of February 18, 2015, a reporter for the Fort Worth Star-Telegram tweeted about the hearing and noted that Judge Burgess followed Sullivan on Twitter:  "Looks like the Denton judge who threw out [Sullivan], ethics complaint, [Judge Burgess], is [a Sullivan] Twitter follower."  *See generally* Tex. R. Civ. P. 18b(b) (listing grounds justifying recusal of a judge).  Eleven minutes after the reporter's tweet, Sullivan's attorney responded with this tweet:  "I bet [Judge Burgess] also communicates, at least semi-annually, with the [TEC]."  The next day at 5:57 a.m., the reporter posted on Twitter that Judge Burgess had deleted his Twitter account:  "1 day after ruling in [Sullivan's] favor without disclosing he's a

---

[3]SLAPP is an acronym for Strategic Lawsuits Against Public Participation. *See Jardin v. Marklund*, 431 S.W.3d 765, 769 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (op. on reh'g).

[4]Sullivan had also moved the TEC to dismiss the sworn complaints based on the TCPA in the administrative proceeding.  *See* Tex. Gov't Code Ann. § 571.126(d) (West 2012).  The TEC rejected Sullivan's argument in its final decision.

Twitter follower, judge deletes account." The regional presiding judge assigned a judge to hear the motion to recuse, and the assigned judge granted the motion. *See* Tex. R. Civ. P. 18a(g)(1). On March 9, 2015, the regional presiding judge assigned Judge David Cleveland, a senior district judge, to preside in the appeal by trial de novo of the TEC's final decision. *See* Tex. R. Civ. P. 18a(g)(7).

Two days later on March 11, 2015, Sullivan moved for an award of attorneys' fees as a prevailing party under the TCPA based on Judge Burgess's prior oral grant of his motion to dismiss at the hearing on February 18, 2015, and further moved for sanctions against the TEC. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a). Sullivan averred that his quick action was necessitated by the statutory, 30-day deadline under which the court was required to rule on his motion to dismiss after the date of the February 18, 2015 hearing or risk that it would be denied by operation of law. *See id.* §§ 27.005(a), 27.008(a) (West 2015). The TEC filed a motion to reconsider its motion to transfer venue on March 17, 2015.

The next day, Judge Cleveland held a hearing to address Sullivan's motion for attorneys' fees, his motion to dismiss, and the TEC's motion to reconsider. Sullivan argued that the only pending issue was his motion for attorneys' fees because application of the TCPA had been finally decided by Judge Burgess; thus, any written order granting the motion to dismiss and awarding attorneys' fees was "a ministerial task." Sullivan also asserted that the TEC's motion to transfer venue could not be reconsidered because further venue motions were

6

barred by the rules. *See* Tex. R. Civ. P. 87.5. In summary, Sullivan argued that "[t]here's no reason to undo Judge Burgess'[s] orders." Although Judge Cleveland stated at the hearing that he did not "think the case ought to be dismissed," he considered the pleadings and affidavits and signed an order on March 18, 2015, granting Sullivan's motion to dismiss under the TCPA, awarding him "– 0 –" in court costs and attorneys' fees, and awarding no sanctions against the TEC. Judge Cleveland did not expressly rule on the TEC's motion to reconsider the venue determination, but the order included language that "any relief not expressly granted herein is denied." Neither Sullivan nor the TEC requested findings of fact and conclusions of law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.007 (West 2015); Tex. R. Civ. P. 296. Both the TEC and Sullivan appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.008; Tex. Gov't Code Ann. § 2001.901(a) (West 2008); Tex. R. App. P. 25.1(c).

## II. DETERMINING PROPER VENUE FOR APPEAL BY TRIAL DE NOVO

When an administrative respondent files an appeal by trial de novo from a final decision of the TEC, he must file the petition "in a district court in Travis County or in the county in which the respondent resides." Tex. Gov't Code Ann. § 571.133(a); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 15.016 (West 2002). In its first issue, the TEC asserts that this mandatory venue provision operated to place venue solely in Travis County because Sullivan did not reside in Denton County at the time the cause of action accrued; thus, because Denton County was a county of improper venue under section 571.133(a), the TEC argues that

7

Judge Burgess erred by denying its motion to transfer and that Judge Cleveland erred by denying its motion to reconsider the venue ruling. *See In re Reynolds*, 369 S.W.3d 638, 647 (Tex. App.—Tyler 2012, orig. proceeding) (discussing trial court's authority to reconsider denial of motion to transfer venue if plenary power has not expired); *Fincher v. Wright*, 141 S.W.3d 255, 260 (Tex. App.—Fort Worth 2004, orig. proceeding & no pet.) (same).

## A. TEC'S ABILITY TO CHALLENGE VENUE

Sullivan asserts that section 571.133 gives only the administrative respondent—Sullivan—the initial right to choose venue and the subsequent right to transfer venue to another county of mandatory venue if his initially chosen county is not sustainable; therefore, the TEC could not seek to transfer venue. *See* Tex. Gov't Code Ann. § 571.133(a), (d). Sullivan argues, therefore, that "there is no basis under the plain language of section 571.133 for the TEC's motion to transfer venue in the first place," requiring this court to affirm Judge Burgess's order denying the TEC's motion to transfer.

Section 571.133 does provide that the administrative respondent initially chooses venue for his petition for review by trial de novo of the TEC's final decision. *Id.* § 571.133(a). Because the TEC could not appeal its own final decision, it necessarily follows that the administrative respondent would choose venue for his petition seeking to appeal the TEC's final decision in a trial de novo. *See id.* (authorizing respondent or respondent's agent to appeal TEC's final decision by filing petition). Section 571.133 further allows the administrative

8

respondent to "request that the appeal be transferred to a district court in Travis County or in the county in which the respondent resides, as appropriate," within thirty days after he filed the petition initiating the appeal by trial de novo. *Id.* § 571.133(a), (c). But we do not read this provision to mean that the TEC has no right to challenge the administrative respondent's choice of venue. Section 571.133(c) merely provides that after an administrative respondent files a petition to appeal the TEC's final decision, he then has thirty days to request an automatic transfer to one of the permissible counties allowed by section 571.133(a). Neither this subsequent right of automatic transfer nor the initial right to choose venue, which are both expressly vested in the administrative respondent, precludes the TEC's ability to challenge the venue chosen by the administrative respondent in filing his appeal of the final decision by trial de novo. As argued by the TEC, such an interpretation would render the TEC "powerless when the respondent filed in an improper venue," which "makes no sense." *See generally id.* § 311.023(5) (West 2013) (allowing courts to consider "consequences of a particular construction" in construing a statute); *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002) (allowing courts to consider statute's objectives and consequences of particular construction even if statute is clear and unambiguous).

Indeed, Sullivan notes that the TEC "may deny a respondent's venue facts" or may "present[] conclusive evidence" contradicting an administrative respondent's "prima facie proof that venue is proper in the county of suit";

9

however, Sullivan fails to recognize that the procedural device by which the TEC would do so would be a motion to transfer venue. *See* Tex. R. Civ. P. 86.1. *See generally Wichita Cty. v. Hart*, 917 S.W.2d 779, 781 (Tex. 1996) ("A defendant raises the question of proper venue by objecting to a plaintiff's venue choice through a motion to transfer venue."). Although Sullivan asserts that only he—as the administrative respondent—would be allowed to choose another proper county of mandatory venue if the TEC successfully challenged his initial choice of venue, the only remaining mandatory county in this instance is Travis County. We conclude that the TEC had the power to move to transfer venue based on an alleged improper venue choice by the administrative respondent, as would any other party in a civil action. *See* Tex. Gov't Code Ann. §§ 571.133(d), 2001.173(a) (West 2008) (mandating that reviewing court in appeal by trial de novo shall try all issues of fact and law as in other civil cases); *see also* Tex. R. Civ. P. 87.2(a) (discussing burdens of establishing venue in terms of "party," not "plaintiff" or "defendant"); *cf. Korndorffer v. Baker*, 976 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1997, pet. dism'd w.o.j.) ("[W]here the application of the statute's plain language would lead to absurd consequences that the legislature could not have possibly intended, we will not apply the statutory language literally.").

## B. STANDARD AND SCOPE OF REVIEW

Because the legal issue of venue must be tried "in the manner applicable to other civil suits," we apply the general venue statutes and rules to our review

10

of Judge Burgess's venue determination.  Tex. Gov't Code Ann. § 571.133(d); *see also id.* § 2001.173(a).  We review Judge Burgess's order denying the TEC's motion to transfer venue by considering the entire record and must uphold his venue determination if there is any probative evidence—pleadings, affidavits, or attachments—supporting it.[5]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064; Tex. R. Civ. P. 87.3(b), 88; *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex. 1995); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757–58 (Tex. 1993) (op. on reh'g); *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 347 (Tex. App.— San Antonio 2007, pet. denied).  In other words, if there is any probative evidence in the entire record that venue was proper[6] in the county where venue is chosen, we must uphold the trial court's determination even if the preponderance of the evidence is to the contrary.  *See Ruiz*, 868 S.W.2d at 758; *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 459 (Tex. App.—El Paso 2006, no pet.).  We review the entire evidentiary record in the light most favorable to the venue ruling while giving no deference to the trial court's application of the law.

---

[5]We note that when the application of a mandatory venue provision is challenged by mandamus, the standard of review is abuse of discretion. *See, e.g., In re Signorelli Co.*, 446 S.W.3d 470, 473 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).  Although the TEC initially sought mandamus relief from the trial court's denial, we dismissed the mandamus petition on the TEC's motion after Judge Cleveland dismissed the case under the TCPA. *In re Tex. Ethics Comm'n*, No. 02-15-00085-CV, 2015 WL 1499033, at *1 (Tex. App.—Fort Worth Mar. 25, 2015, orig. proceeding).

[6]"Proper venue" is statutorily defined as "the venue required by . . . [a] statute prescribing mandatory venue."  Tex. Civ. Prac. & Rem. Code Ann. § 15.001(b)(1) (West 2002).

11

*Ruiz*, 868 S.W.2d at 758; *Garza v. State & Cty. Mut. Fire Ins. Co.*, No. 2-06-202-CV, 2007 WL 1168468, at *3 (Tex. App.—Fort Worth Apr. 19, 2007, pet. denied) (mem. op.). Both Sullivan and the TEC state in their briefing that Judge Burgess did not consider the TEC's attachments to its venue pleadings in ruling on its motion to transfer venue. But Judge Burgess specifically stated in the denial order that he considered "the pleadings on file," which would include any pleading attachments. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(a) (West 2002); Tex. R. Civ. P. 87.3(b), 88; *see also* Tex. R. Civ. P. 59 (recognizing "written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings" by attachment). The order controls over any statements made at the hearing. *See Hamilton v. Empire Gas & Fuel Co.*, 110 S.W.2d 561, 566 (Tex. 1937) ("Judgments and orders of courts of record to be effectual must be entered of record."); *In re JDN Real Estate–McKinney L.P.*, 211 S.W.3d 907, 914 n.3 (Tex. App.—Dallas 2006, orig. proceeding) (holding conflict between oral pronouncement and written order resolved in favor of order). Further, other than the final decision, which the TEC attached for jurisdictional purposes, none of the TEC's attached venue proof was a part of the underlying administrative proceeding; thus, section 571.133(d) does not apply to bar consideration of the venue attachments as Sullivan seems to argue. *See* Tex. Gov't Code Ann. § 571.133(d) (in trial de novo, barring trial court's admission "in evidence the fact of prior action by the [TEC] or the nature of that action" except to show trial court's jurisdiction). Indeed, venue was not at

12

issue in the administrative proceeding. Thus, the TEC's attachments to its venue pleadings are part of the entire record we are to consider in our review of Judge Burgess's venue ruling and Judge Cleveland's refusal to reconsider.

Sullivan filed his petition initiating an appeal by trial de novo in Denton County as the alleged county of his residence, and the TEC specifically denied Sullivan's pleaded venue fact. Thus, under the venue rules, Sullivan was required to present prima facie proof that Denton County was a county of his residence by any probative evidence. *See* Tex. R. Civ. P. 87.3(a); *GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 543 (Tex. 1998); *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 262 (Tex. 1994). A party's prima facie proof of his residence, standing alone, is sufficient to constitute probative evidence supporting the choice of venue, which cannot be rebutted except through conclusive evidence to the contrary. *See Ruiz*, 868 S.W.2d at 757–58; *Rosales v. H.E. Butt Grocery Co.*, 905 S.W.2d 745, 750 (Tex. App.—San Antonio 1995, writ denied) (op. on reh'g); *see also* Tex. R. Civ. P. 87.3(a). Prima facie proof is a minimal evidentiary hurdle and need only support a rational inference that the factual venue allegation is true. *See Rosales*, 905 S.W.2d at 748.

## C. APPLICATION

We now turn to our review of the venue determinations made by Judge Burgess and Judge Cleveland, which is a threshold question. Again, statutory, mandatory venue lay in up to two counties: Travis County and the county of Sullivan's residence. The TEC asserts that Travis County and the county of

13

Sullivan's residence were the same and that no probative evidence showed that Sullivan resided anywhere other than Travis County at the time the claim accrued.

### 1. Accrual Date

Judge Burgess was required to determine venue "based on the facts existing at the time the cause of action that is the basis of the suit accrued." Tex. Civ. Prac. & Rem. Code Ann. § 15.006 (West 2002). The TEC argues that the suit accrued, at the latest, on the date it issued its final decision and when Sullivan received it—July 21, 2014. Sullivan suggests that accrual could have occurred when Sullivan filed his petition to appeal the TEC's final decision—August 22, 2014—or when the TEC filed its petition as a realigned plaintiff—December 23, 2014. At oral argument, Sullivan argued that the accrual date was August 22, 2014.

Accrual means the point in time at which the right to institute suit arose, not when the right is exercised. *See Shamrock Oil & Gas Corp. v. Price*, 364 S.W.2d 260, 262 (Tex. Civ. App.—Amarillo 1963, no writ) ("By the expression 'the cause of action or a part thereof accrued' [the venue statute] means the right to institute and maintain suit[,] and whenever one person may sue another[,] a cause of action has accrued."); *cf. S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (discussing "accrual" in the context of statutes of limitations). Sullivan's right to an appeal by trial de novo, which is the "cause of action" he initially brought in Denton County, arose or accrued on the date Sullivan received the TEC's final decision—July 21,

14

2014. *See* Tex. Gov't Code Ann. § 571.133(b) (starting appellate timetable from the date final decision received by respondent); *Gen. Motors Acceptance Corp. v. Howard*, 487 SW.2d 708, 710 (Tex. 1972) (holding venue in county of residence established through evidence of date of accrual of claim and plaintiffs' residence in that county on that date). Therefore, we look to the entire record for probative venue evidence supporting the trial court's decision that Sullivan resided in Denton County as of July 21, 2014. *See In re Socorro Indep. Sch. Dist.*, No. 13-09-00500-CV, 2010 WL 1138451, at *5 (Tex. App.—Corpus Christi Mar. 22, 2010, orig. proceeding) (mem. op.) ("In sifting through the foregoing [venue] evidence, . . . we must focus our attention on the real parties' residence at the time of the accrual of their causes of action.").

## 2. Proffered Venue Evidence

In his petition, Sullivan alleged that he resided in Denton County. The TEC then specifically denied this venue fact in its motion to transfer venue. The TEC attached to its venue pleadings four separate complaints and petitions Sullivan filed against the TEC in state and federal courts located in Travis County and in which Sullivan alleged he was a resident of Travis County. Sullivan made these venue allegations between September 3, 2013, and August 18, 2014. An investigator hired by the TEC averred in his October 10, 2014 affidavit that Sullivan owned a home in Travis County at least since 2003, which he declared to be his homestead for 2014 for property-tax purposes, and that he was registered to vote in Travis County, although Sullivan had filed a voter-

15

registration application in Denton County on September 24, 2014, and identified his address as an apartment in Denton County. Sullivan's vehicles were registered with the state at his Travis County address, and his driver's license listed his address as being in Travis County. The investigator noted that Sullivan announced on his website[7] on August 21, 2014 that "the Sullivans have decided to renounce residency in Travis County. I'm moving my residency somewhere that respects the rule of law." Before October 13, 2014, Sullivan's wife stated on her Facebook page that she lived in Travis County.

Sullivan responded and attached his December 19, 2014 affidavit in which he averred he had been a resident of Denton County "for more than one year":

> I am a resident of Denton County. . . . I have resided in Denton County for more than one year. My employer has had an office in north Texas for eighteen . . . months and I have been routinely coming to Denton County to work out of the office and surrounding area throughout that time. I will be working and residing in Denton County and north Texas for the foreseeable future.
>
> I have an apartment in Denton County. I entered into a lease on August 21, 2014 . . . . The lease is for one year. . . .
>
> It is my intent to reside in Denton County permanently. Both my wife and I are registered to vote in Denton County and we registered to vote in Denton County immediately after signing a lease. In the last election in November, 2014, we voted in Denton County.

---

[7]The website—www.michaelquinnsullivan.com—is not the Empower Texans website but identifies Sullivan as having "the honor of leading Empower Texans" and a goal "to make it easier for citizens to be informed and effectively engaged in our government." The site has links to the Empower Texans site.

All of my immediate family, including my parents, live in Denton County, some for more than fifteen . . . years. Prior to getting an apartment in Denton County, I considered my parents' home as my Denton County residence. I had a complete right of access to my parents' property.

Sullivan attached a copy of the one-year lease to his affidavit, which showed that only Sullivan would be living in the apartment.

In reply, the TEC attached a second affidavit from its hired investigator in which he averred that Empower Texans named Sullivan as its president and registered agent on August 27, 2014, and that Texans for Fiscal Accountability[8] named Sullivan as its registered agent as of November 6, 2014. Both listed Sullivan's address as being in Travis County at that time. The investigator also noted that before September 17, 2014, the address for Empower Texans was in Travis County; however "[a]t some point thereafter," Empower Texans added a Dallas County address as one of its contact points. A paralegal for the TEC's attorney attached her affidavit in which she stated that Sullivan again listed the Travis County home as his homestead for 2015 for property-tax purposes.

### 3. Prima Facie Proof

The TEC argues, as it did before Judge Burgess, that Sullivan's assertions of residence in his December 2014 affidavit were conclusory and, thus, no probative evidence of his residence on the date of accrual. Affidavits regarding venue "must be made on personal knowledge, shall set forth specific

---

[8]Texans for Fiscal Responsibility is an assumed name of Empower Texans.

17

facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." Tex. R. Civ. P. 87.3(a). *See generally Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 603 (Tex. 1999) ("The usual types of prima facie proof in a venue determination—pleadings and affidavits establishing places of residence, principal offices, and even where the cause of action accrued—are usually objective enough that pleadings and affidavits can fairly be said to enable the trial court to correctly decide the [venue] issue.").

Sullivan's assertion that he was "a resident" of Denton County "for more than one year"—before December 2013—is nothing more than a legal conclusion unless it is supported by facts that establish such residence. *See A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 622–23 (Tex. 1939) (holding allegation that plaintiff resided in county where suit was filed at the time claim accrued was legal conclusion); *Republic Bankers Life Ins. Co. v. McCool*, 441 S.W.2d 314, 315–16 (Tex. Civ. App.—Tyler 1969, no writ) (concluding venue affidavit statement that plaintiffs were "residents of Hopkins County" when cause of action accrued was legal conclusion unsupported by facts); *see also Lenoir v. Marino*, No. 01-13-01034-CV, 2015 WL 4043248, at *14 (Tex. App.—Houston [1st Dist.] July 2, 2015, pet. filed) (op. on reh'g) ("[L]ogical conclusions are not improperly conclusory if they are based on underlying facts stated in the affidavit or its attachments."); *Weech v. Baptist Health Sys.*, 392 S.W.3d 821, 826 (Tex. App.—San Antonio 2012, no pet.) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion."). Sullivan relied on three facts,

18

occurring before July 21, 2014, to establish his more-than-one-year residence in Denton County: (1) his self-described routine travel to Denton County to work in his employer's "office in north Texas" and the "surrounding area," (2) his "complete right of access" to his parents' Denton County home, which he considered to be his "Denton County residence," and (3) his "immediate family" has lived in Denton County, with some members residing there for more than fifteen years.[9]

For venue purposes, an individual may have more than one residence. *Snyder v. Pitts*, 241 S.W.2d 136, 139–40 (Tex. 1951) (orig. proceeding); *Rosales*, 905 S.W.2d at 748; *Howell v. Mauzy*, 899 S.W.2d 690, 697 (Tex. App.—Austin 1994, writ denied). To qualify as a second residence for venue purposes, the residence must meet three elements: (1) a fixed place of abode within the possession of the party, (2) occupied or intended to be occupied consistently over a substantial period of time, and (3) with an element of permanence. *See Snyder*, 241 S.W.2d at 140; *In re Salgado*, 53 S.W.3d 752, 762 (Tex. App.—El Paso 2001, orig. proceeding); *Howell*, 899 S.W.2d at 697;

---

[9]The other facts Sullivan relied on to establish his residency occurred after July 21, 2014—the apartment lease, registering to vote in Denton County, voting in the December 2014 election in Denton County, his statement that he "will be working and residing in Denton County and north Texas for the foreseeable future," his statement that he had "decided to renounce residency in Travis County" and move "somewhere that respects the rule of law," and his assertion that his intention at the time he made the affidavit was "to reside in Denton County permanently." We note that his post-accrual statement renouncing residency in Travis County did not specify that he was moving to Denton County, only that he was moving where the "rule of law" was "respect[ed]."

*Moore v. Oliver*, 295 S.W.2d 735, 737 (Tex. App.—Beaumont 1956, no writ). A person's declaration as to his intent is not conclusive. *See Cauble v. Gray*, 604 S.W.2d 197, 198 (Tex. Civ. App.—Dallas 1979, no writ); *Kerr v. Davenport*, 233 S.W.2d 197, 199 (Tex. Civ. App.—San Antonio 1950, no writ).

Where Sullivan's "immediate family,"[10] including his parents, lived is not probative as to where Sullivan lived at the operative time. *Cf. Socorro*, 2010 WL 1138451, at *5–6 (holding venue proper in El Paso County even though party "born and raised" in Cameron County and intended Cameron County to be her permanent residence because claim accrued while party temporarily lived in El Paso County); *Ward v. Lavy*, 314 S.W.2d 381, 383 (Tex. Civ. App.—Eastland 1958, no writ) ("Ordinarily, a *minor's* [residence] is that of his parents." (emphasis added)). Further, his right of "access" to his parents' home in Denton County does not equate to a right of possession in that home sufficient to raise prima facie proof of a secondary residence. *See Snyder*, 241 S.W.2d at 140 ("For a place of abode to become a residence [under the first element of the secondary-

---

[10]It is unclear whom Sullivan intended to include in his "immediate family" other than his parents. Aside from Sullivan's statements that his wife registered to vote in Denton County and that they "decided to renounce" their Travis County residency and would move—all of which occurred after the claim accrued—the venue evidence shows that his wife lived in the Travis County home that they had designated as a homestead for property-tax purposes. *Cf. Weisenburg v. Teleprompter Corp.*, 605 S.W.2d 737, 739 (Tex. Civ. App.—Dallas 1980, no writ) (holding evidence of party's claimed homestead is some evidence that the party had a possession right, intended to occupy the property, and considered the property to be his permanent residence for venue purposes). Indeed, no one other than Sullivan was allowed to live in the Denton County apartment under the terms of Sullivan's lease.

20

residence test] the defendant must have some right of possession and not be a mere visitor."); *cf. In re Kuntz*, 124 S.W.3d 179, 184 (Tex. 2003) (orig. proceeding) (holding access to documents not possession of documents under discovery rules). The plain meaning of possession includes an element of control or dominion over the property, while access is a broader term that confers the mere opportunity or ability to enter.[11] *See Access & Possession*, Black's Law Dictionary (10th ed. 2014); *cf. Snyder*, 241 S.W.2d at 140 (holding payment of rent meets the right-of-possession element to establish a secondary residence). *See generally Zanchi v. Lane*, 408 S.W.3d 373, 378 (Tex. 2013) (considering dictionary definitions in interpreting undefined, statutory term).

Finally, Sullivan's routine travel to Denton County to work for his employer in "north Texas" and the "surrounding area" is not prima facie proof of a secondary residence in Denton County. In the absence of other evidence showing that a person's presence within the county is fixed, consistent, and

---

[11]Sullivan implies that his right of access to his parents' home equated to "derivative possession," which established his secondary residence in Denton County. Other than defining "derivative possession," Sullivan provides no legal authority to support this argument. As we have concluded, Sullivan's bare right to "access" his parents' house does not equate to possession sufficient to establish a secondary residence and would meet no definition of a tenant or bailee as Sullivan seems to suggest. *See generally* Tex. Bus. & Com. Code Ann. § 7.102(a)(1) (West 2011) (defining bailee); Tex. Prop. Code Ann. § 92.001(6) (West 2014) (defining tenant). Indeed, people generally have access to many places, both public and private; but that access, without evidence of more, does not establish a fixed place of abode within the possession of the party that was permanent rather than temporary equating to a necessary element of a legal, secondary residence for venue purposes.

21

permanent, business activities in a particular county alone are insufficient to establish a secondary residence. *Plains Ins. Co. v. Acuna*, 614 S.W.2d 885, 887–89 (Tex. Civ. App.—Eastland 1981, no writ); *Cauble*, 604 S.W.2d at 199; *Hanslik v. Dittfurth*, 356 S.W.2d 495, 496 (Tex. Civ. App.—San Antonio 1962, no writ); *Greer v. Newton*, 245 S.W.2d 299, 303 (Tex. Civ. App.—Eastland 1951, no writ). Sullivan's business trips to Denton County, which are undefined as to frequency and duration, are not prima facie evidence that his "combined volition, intention[,] and action" before July 21, 2014 established a consistent occupancy in Denton County over a substantial period of time. *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964); *see Snyder*, 241 S.W.2d at 141 (collecting cases on second element of secondary-residence test and concluding evidence that defendant spent five days a week in county for two consecutive years was consistent occupancy over a substantial period of time); *Plains Ins.*, 614 S.W.2d at 887–89 (finding no evidence of secondary residence in Maverick County because plaintiff testified he previously rented a house in Maverick County to "live there for . . . several months" before leaving to work in other counties while his wife "sometimes" stayed in Maverick County, lived in Lubbock County at the time his claim accrued, and moved back to Maverick County after claim accrued); *cf. Rosales*, 905 SW.2d at 749 (reviewing record evidence—including evidence that Maverick County house, which was partially owned by party, "has always been his permanent residence which he has occupied for substantial periods of times in the past and intends to continue to occupy in the future"—and

22

concluding party presented prima facie proof of secondary residence in Maverick County). Sullivan wholly failed to supply any underlying facts to support his vague and summary assertion of routine travel to Denton County to work in North Texas; therefore, his routine-travel assertion in his affidavit was a conclusion unsupported by facts and cannot be prima facie proof of a secondary residence.

The facts occurring before the claim accrued likewise do not support his legal conclusion that he had a secondary residence in Denton County on July 21, 2014. *See Blanton*, 129 S.W.2d at 622–23 (holding allegation that plaintiff resided in county where suit was filed at the time claim accrued was legal conclusion). Therefore, his legal conclusion in his affidavit that he was a resident of Denton County did not qualify as prima facie proof because it was unsupported by facts showing that he had at least a secondary residence in Denton County on the date the claim accrued. *See* Tex. R. Civ. P. 87.3(a) ("Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed *fully and specifically setting forth the facts supporting such pleading.*" (emphasis added))*; cf. Cent. Tex. Elec. Co-op. v. Stehling*, 282 S.W.2d 729, 730 (Tex. Civ. App.—San Antonio 1955, writ dism'd) (concluding party did not have secondary residence in Gillespie County because "he did most everything that he could have done to indicate that he was moving away from Gillespie County and establishing his home in Bexar County" approximately nine months before suit filed, including divesting himself of all property and business interests in Gillespie

County); *Gilbert v. Mecom*, 247 S.W.2d 573, 573–74 (Tex. App.—San Antonio 1952, no writ) (affirming trial court's grant of defendant's motion to transfer venue out of Zapata County because evidence that defendant used ranch in Zapata County for "recreational purposes" did not show as a matter of law that ranch was fixed place of abode occupied consistently over a substantial period of time; thus, ranch was not secondary residence for venue purposes).

The TEC specifically denied Sullivan's allegation that he was a resident of Denton County. Thus, Sullivan was required to offer prima facie proof of at least a secondary residence in Denton County on the date the claim accrued. *See* Tex. R. Civ. P. 87.3(a); *GeoChem Tech*, 962 S.W.2d at 543. This he did not do. Accordingly, there was no probative evidence supporting the trial court's legal determination that venue was proper in Denton County, and no rational inference could have been made placing venue in Denton County at the time the claim accrued. The burden then shifted to the TEC to prove that venue was proper in its chosen county, which it met by raising an applicable mandatory-venue statute providing for venue in Travis County. *See* Tex. R. Civ. P. 87.2(a); *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 221 (Tex. 1999) (orig. proceeding). Thus, Sullivan failed to offer any prima facie proof of a secondary residence as of July 21, 2014; therefore, Judge Burgess erred by denying the TEC's motion to transfer venue, and Judge Cleveland erred by denying its motion to reconsider. *See Mo. Pac. R.R.*, 998 S.W.2d at 216 (holding trial court has no discretion to

24

determine legal principles controlling its venue ruling or in applying the law to the facts). We sustain the TEC's first issue.

## III. CONCLUSION

Because Sullivan offered no prima facie proof that he resided in Denton County for venue purposes on the date the claim accrued, we conclude that Judge Burgess erred by denying the TEC's motion to transfer venue to Travis County and that Judge Cleveland erred by failing to reconsider the denial. Because this is a threshold determination, we need not address the TEC's second issue and the arguments raised by amici curiae that the TCPA was inapplicable to the appeal by trial de novo or Sullivan's issue that he was entitled to attorneys' fees and costs under the TCPA. *See* Tex. R. App. P. 47.1. Indeed, we express no opinion as to the applicability of the TCPA to an administrative respondent's appeal by trial de novo from an administrative final decision or as to the merits of that appeal by trial de novo. Accordingly, we reverse Judge Burgess's order denying the TEC's motion to transfer venue and Judge Cleveland's subsequent dismissal order and remand with instructions to (1) transfer the appeal by trial de novo to the county of mandatory venue—Travis County—and (2) tax costs that were "incurred [in the trial court] prior to the time such suit is filed in the court to which said cause is transferred" against Sullivan. Tex. R. Civ. P. 89; *see* Tex. R. App. P. 43.2(d), 43.3; *In re S.G.S.*, 53 S.W.3d 848, 852 (Tex. App.—Fort Worth 2001, no pet.). The TEC's appellate court costs are taxed against Sullivan. *See* Tex. R. App. P. 43.4.

25

PER CURIAM

PANEL:  GABRIEL, J.; LIVINGSTON, C.J.; and GARDNER, J.

DELIVERED:  November 5, 2015