# Supreme Court of Texas

No. 23-0703

Southern Methodist University and Paul J. Ward,

*Petitioners*,

v.

South Central Jurisdictional Conference of the United Methodist
Church and Bishop Scott Jones,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued January 15, 2025**

JUSTICE LEHRMANN delivered the opinion of the Court, in which
Chief Justice Blacklock, Justice Boyd, Justice Devine, Justice Busby,
Justice Huddle, Justice Young, and Justice Sullivan joined in full, and
in which Justice Bland joined except as to Part IV(B).

JUSTICE YOUNG filed a concurring opinion, in which Justice
Devine and Justice Sullivan joined in full, and in which Chief Justice
Blacklock joined as to Parts I, III, and IV.

JUSTICE BLAND filed an opinion dissenting in part.

Southern Methodist University, founded over a century ago by
predecessors to the South Central Jurisdictional Conference of the

United Methodist Church, is a renowned institution of higher learning. It is also a nonmember, nonprofit corporation. Until recently, SMU's articles of incorporation consistently reflected that the university is "owned" and "controlled" by the Conference and that the Conference's approval is required to amend those articles. However, in 2019, SMU's board of directors, without the Conference's approval, amended SMU's articles of incorporation to delete all references to the Conference as well as provisions detailing the board's composition and election. After SMU filed the amended articles with the Texas Secretary of State, the Conference sued, seeking a declaration that the 2019 amendments are void and asserting claims for breach of contract and filing a materially false instrument.

According to SMU, Texas corporations law forecloses the Conference's suit because, as a nonmember of SMU, the Conference cannot complain that the board exceeded its authority under the articles of incorporation and has no contractual rights arising from those articles. The trial court dismissed the Conference's claims for declaratory judgment and breach of contract under Texas Rule of Civil Procedure 91a and granted summary judgment on the false-filing claim. The court of appeals reversed in relevant part.

We hold that the Conference has statutory authority to sue SMU to enforce its rights under the articles and the Texas Business Organizations Code and that the Conference may pursue, at least at this stage, its breach-of-contract claim as a third-party beneficiary of SMU's articles of incorporation. However, we agree with SMU that it is entitled

to summary judgment on the false-filing claim. Accordingly, we affirm the court of appeals' judgment in part and reverse it in part.

## I. Background

In 1911, SMU was organized as a corporation for the purpose of the establishment, maintenance, and support of an institution of higher learning. In SMU's original charter, the incorporators expressed their intent for the established university "to be owned, controlled and managed by the Texas Conferences of the Methodist Episcopal Church South," a predecessor-in-interest to the respondent in this case. The charter named the initial trustees and provided that their successors would be selected in the manner determined by the Texas Conferences.

The charter was amended in 1916 to state that the corporation was "not organized for the purpose of pecuniary gain or profit" and to prescribe various requirements for the composition, election, and terms of the board of trustees. The 1916 amendment also gave approval rights over charter amendments to the controlling conference, stating:

> No amendment to this charter shall ever be made unless the same shall have been first affirmatively authorized and approved by the General Conference of the Methodist Episcopal Church, South, or by some authorized agency of said General Conference.

The charter—or, in modern parlance, articles of incorporation or certificate of formation[1]—has been amended numerous times, and in

---

[1] The Business Organizations Code, which took effect in 2006, replaced the term "articles of incorporation" with "certificate of formation." *See* Act of May 13, 2003, 78th Leg., R.S., ch. 182, § 1, sec. 3.001(a), 2003 Tex. Gen. Laws 267, 319 (requiring the filing of a "certificate of formation" to form a

3

1968 it was amended to vest ownership and control in the respondent, the South Central Jurisdictional Conference of the United Methodist Church. As amended in 1996 with the Conference's approval, SMU's articles continued to reflect:

- the corporation was formed for the establishment, maintenance, and support of an institution of higher learning "to be forever owned, maintained and controlled by the" Conference;

- the corporation is nonprofit and has no members;

- the Conference has the right to elect and remove for cause members of the board of trustees;

- the qualifications of the trustees would be those "fixed by the Discipline of The United Methodist Church for the Trustees of its educational institutions" or, if none existed, would be "fixed by" the Conference;

- the Conference's consent is required to sell or lease "campus property and such other property as may be used for the conduct of the business of the corporation"; and

- no amendment to the articles "shall ever be made" unless first authorized and approved by the Conference or an authorized agency thereof.

The 1996 articles remained the operative governing document when SMU filed the 2019 amendments that gave rise to this suit.

In 2019, doctrinal disagreements led some Methodist entities to disaffiliate from the national Church. SMU's board of trustees voted 34-to-1 to amend the 1996 articles to, among other things, delete all references to the Conference and all provisions addressing the composition of the board. The Conference did not "authorize" or

corporation or other filing entity). SMU's formation document is currently titled articles of incorporation. We use the terms interchangeably.

4

"approve" the amended articles, which SMU nevertheless filed with the secretary of state on November 15, 2019, along with a certificate of amendment. As amended, SMU's articles of incorporation no longer reflect that it is "owned, maintained and controlled by" the Conference; that the Conference has any rights with respect to the qualifications, election, and removal of trustees; that the Conference's consent is required with respect to the sale or lease of real property; or that the Conference's approval is required to amend the articles.

The Conference sued SMU in response to what it deemed SMU's "unauthorized acts." In its live pleading, the Conference brings declaratory-judgment claims regarding the validity and effectiveness of the 2019 amendments to the articles, seeking declarations that (1) the 1996 articles are SMU's "effective Articles of Incorporation . . . and all actions taken by SMU or its representatives in violation of such articles are void"; (2) the 2019 amendments, and any actions taken by SMU in reliance thereon, are void; (3) the Conference "retains all its rights, and its long-standing and permanent relationship with SMU, guaranteed by SMU's governing documents"; and (4) any amendment to the 1996 articles must comply with the terms thereof, including that such an amendment "must first be authorized and approved by" the Conference. The Conference also asserts that SMU's actions constituted a breach of contract and claims that, in filing a certificate of amendment with the secretary of state averring that the 2019 amendments had been approved "in the manner required by [the Business Organizations C]ode

5

and the governing documents of the entity," SMU filed a "materially false" instrument in violation of Section 4.008 of the Code.[2]

SMU moved to dismiss the claims under Texas Rule of Civil Procedure 91a.[3] With respect to the claims seeking to enjoin or declare void the 2019 articles, SMU argued that the Conference is not among the limited group of persons to whom the Code[4] grants authority to sue to enjoin SMU's allegedly ultra vires acts—that is, SMU's corporate actions that violated its governing documents. SMU further argued that the claims seeking damages fail because the Conference alleges no monetary harm, that the contract claim fails because no enforceable contract exists as a matter of law between the Conference and SMU, and that the false-filing claim under Section 4.008 fails because the complained-of statement in the certificate of amendment is a conclusion

---

[2] The Conference asserted several other claims that are not before us and on which we therefore express no opinion. Specifically, the Conference sought additional declarations regarding whether SMU's governing documents and the 1922 deed conveying to SMU 133 acres of the Conference's real property (where the school's campus is located) created a trust and fiduciary relationship between the parties, and it asserted claims for breach of fiduciary duty and promissory estoppel. The trial court granted SMU's motion to dismiss the fiduciary-duty and promissory-estoppel claims under Rule 91a, and it granted summary judgment for SMU on the claims for additional declaratory relief. The court of appeals affirmed as to all these claims, 674 S.W.3d 334, 372, 383 (Tex. App.—Dallas 2023), and the Conference did not petition this Court for review. Accordingly, those portions of the court of appeals' judgment are final. *See* TEX. R. APP. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review.").

[3] SMU ultimately filed three motions to dismiss, filing a successive motion each time the Conference amended its petition.

[4] Unless otherwise stated, "Code" refers to the Texas Business Organizations Code.

6

of law that cannot be "false." The trial court granted the motion as to the declaratory-judgment and breach-of-contract claims but denied it as to the false-filing claim. However, the trial court subsequently granted SMU's motion for summary judgment as to that claim and rendered a final judgment in SMU's favor. The Conference appealed.[5]

The court of appeals reversed in pertinent part and remanded the case to the trial court. 674 S.W.3d 334, 383–84 (Tex. App.—Dallas 2023). First, although neither party raised the issue, the court sua sponte addressed whether it had subject matter jurisdiction over the case because the issues "potentially involve matters of church doctrine." *Id.* at 350; *see Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 605–06 (Tex. 2013) ("Courts do not have jurisdiction to decide questions of an ecclesiastical or inherently religious nature, so as to those questions they must defer to decisions of appropriate ecclesiastical decision makers."); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1993) (explaining that issues of subject matter jurisdiction may be raised by the court sua sponte). Concluding that church doctrine need not be considered to resolve issues related to the validity of SMU's amended articles of incorporation, the court of appeals determined it had jurisdiction. 674 S.W.3d at 351.

---

[5] While SMU's motion to dismiss was pending, Bishop Scott Jones, the member of SMU's board of trustees who cast the sole negative vote to amend the 1996 articles, intervened in the suit seeking injunctive relief. When the board then terminated his membership, he added claims for declaratory relief and brought third-party claims against SMU's general counsel. The trial court granted SMU's motion to dismiss Bishop Jones's claims under Rule 91a, and the court of appeals affirmed. 674 S.W.3d at 383. Bishop Jones did not petition this Court for review, and his claims are not before us. TEX. R. APP. P. 53.1.

7

Next, the court of appeals considered SMU's argument that the Conference, as a nonmember of SMU, lacks statutory authority to complain of SMU's allegedly ultra vires acts.[6]  The court held that, while the Code forecloses the Conference from challenging an action of SMU as invalid "merely because it is *ultra vires*[,] . . . if the act breaches some other legal duty imposed on the corporation *in addition* to being *ultra vires*, it may be challenged on that additional ground."  *Id.* at 361.  The Conference pleaded violations of such additional duties, including via its breach-of-contract and false-filing claims.  *Id.* at 362.  The court of appeals went on to conclude that the pleadings sufficiently supported the Conference's breach-of-contract claim, rendering the trial court's dismissal of that claim improper, and that the Conference presented more than a scintilla of evidence on its false-filing claim, defeating summary judgment for SMU on that claim.  *Id.* at 362–68, 374–81.

Ultimately, the court of appeals remanded for further proceedings on the declaratory-judgment claims regarding the validity of the 2019 amendments to SMU's articles of incorporation, the breach-of-contract claim premised on SMU's alleged violations of the 1996 articles, and the false-filing claim.  We granted SMU's petition for review.

---

[6] The parties and the court of appeals label this issue as one of statutory standing, though they correctly recognize that it does not invoke "standing" in the constitutional, jurisdictional sense.  674 S.W.3d at 356–57.  Rather, the question is whether the Conference "falls within the class of [persons] . . . authorized to sue," which may deprive the Conference of the right to relief but does not affect the courts' jurisdiction to grant it.  *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020) (alteration in original) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).  To avoid confusion, we will refrain from describing the issue presented as one involving standing.

## II. Subject Matter Jurisdiction

Like the court of appeals, we begin by considering whether we have jurisdiction over the Conference's claims, as the First Amendment "prohibit[s] civil courts from inquiring into matters concerning 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of a church to the standard of morals required of them.'" *Masterson*, 422 S.W.3d at 601 (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713–14 (1976)). In *Masterson*, which involved a church-property dispute between a local Episcopal parish and the regional diocese from which the parish sought to withdraw due to doctrinal differences, we confirmed that courts in Texas should apply the "neutral principles methodology" to resolve such disputes. *Id.* at 607. Under that approach, courts "do not have jurisdiction to decide questions of an ecclesiastical or inherently religious nature, so as to those questions they must defer to decisions of appropriate ecclesiastical decision makers." *Id.* at 605–06. But courts "apply neutral principles of law to non-ecclesiastical issues involving religious entities"—"such as land titles, trusts, and corporate formation, governance, and dissolution"—"in the same manner as they apply those principles to other entities and issues." *Id.* at 606. We explained in *Masterson* that this methodology "respects and enforces the manner in which religious entities and their adherents choose to structure their organizations and their property rights." *Id.*

We agree with the court of appeals that resolving this dispute does not require us to impermissibly opine on matters of church doctrine and that we therefore have jurisdiction over the Conference's claims. To

be sure, "courts must be careful not to intrude upon internal matters of church governance." *Westbrook v. Penley*, 231 S.W.3d 389, 397 (Tex. 2007). In *Milivojevich*, for example, the United States Supreme Court held that the First Amendment foreclosed court inquiry into "whether the decisions of the highest ecclesiastical tribunal of [the hierarchical Serbian Orthodox Church] complied with church laws and regulations," specifically, the Serbian Orthodox Church's constitution and penal code. 426 U.S. at 713; *see also In re Diocese of Lubbock*, 624 S.W.3d 506, 509 (Tex. 2021) (holding that courts lacked jurisdiction over a Catholic deacon's defamation claims arising out of the Diocese's public statements regarding an internal investigation of its clergy because resolving the claims would both require an evaluation of whether the Diocese properly applied canon law and encroach on the Diocese's decision to investigate its clergy in accordance with its own internal policies). This case requires no such inquiry. Though a religious entity, the Conference chose to establish SMU as a nonprofit corporation subject to Texas corporations law. At least in this case, its claims may be resolved by looking solely to Texas statutes and SMU's articles of incorporation.

Relatedly, the doctrinal differences that purportedly led SMU to amend its articles have no bearing on our resolution of this dispute. Far from interfering with ecclesiastical matters, exercising our jurisdiction here "respects and enforces the manner in which [the] religious entities [at issue] and their adherents ch[o]se to structure their organizations and their property rights." *Masterson*, 422 S.W.3d at 606.

10

The Conference does not argue otherwise; indeed, the Conference is the entity seeking relief from the courts, which of course may grant such relief only if they have jurisdiction over the dispute and the parties. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) ("A court must possess both subject matter jurisdiction over a case and personal jurisdiction over a party to issue a binding judgment."). In an amicus brief submitted in support of the Conference, the Becket Fund for Religious Liberty asserts that this case cannot be resolved without unconstitutionally impeding the Conference's ability to manage its own affairs and that the courts must therefore "enforce" the Conference's "'forever' control over SMU" by "declar[ing] invalid" "SMU's unilateral effort to circumvent that control." For two reasons, we disagree that these arguments, whatever their force in other contexts, summarily require a ruling in the Conference's favor here.

First, as discussed, we can resolve this case by applying Texas statutes and SMU's articles of incorporation to only nonecclesiastical matters. Second, if courts could *not* decide the case without "resolv[ing] a religious question or imped[ing] the church's authority to manage its own affairs," *Diocese of Lubbock*, 624 S.W.3d at 509 (internal quotation marks omitted), the result would be dismissal for lack of jurisdiction, not rendition of judgment granting the Conference (or any other party) affirmative relief, *see id.* at 519 (holding that the

11

ecclesiastical-abstention doctrine required dismissal of the case for want of jurisdiction).[7]

The Becket Fund argues in effect that, based on substantive principles of First Amendment law, the statutes on which SMU relied to amend its articles of incorporation—and which authorized the secretary of state to accept the amended articles for filing—violate the First Amendment as applied to the Conference. *Cf. Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church of N. Am.*, 344 U.S. 94, 117–21 (1952) (holding that a New York statute, which divested Russian Orthodox churches in New York from governance by the Moscow synod and required that those churches be governed in the future by the ecclesiastical body and hierarchy of the American metropolitan district, violated the constitutional prohibition against interference with the exercise of religion). Whatever the merits of this contention, which the Conference has not itself raised, even on the argument's own terms we would have authority to "enforce" the Conference's control over SMU, which we could not do without subject matter jurisdiction.

Satisfied of our jurisdiction, we turn to the merits of the case.

### III. Standard of Review

We review summary judgments and Rule 91a dismissal orders de novo. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (Rule 91a); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.

---

[7] Amicus First Liberty Institute advocates for that result, agreeing with the Becket Fund that this dispute poses a religious question that intrudes on matters of church governance but arguing that the only possible disposition is dismissal for lack of jurisdiction.

2005) (summary judgment). Dismissal under Rule 91a is proper "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. To obtain summary judgment, the movant must demonstrate "that no genuine issue of material fact exists and [it] is entitled to judgment as a matter of law." *Austin Tr. Co. v. Houren*, 664 S.W.3d 35, 42 (Tex. 2023); TEX. R. CIV. P. 166a(c).

## IV. Analysis

SMU presents three main issues in this Court. First, SMU reiterates that the Conference lacks authority to complain of SMU's allegedly ultra vires acts, arguing that the court of appeals impermissibly expanded the statutory list of persons authorized to bring such suits. Second, SMU contends that the Conference's breach-of-contract claim independently fails because a nonprofit corporation's articles of incorporation do not constitute a binding contract enforceable by a nonmember. Third, SMU asserts that the Conference's false-filing claim fails as a matter of law. We address each issue in turn.

## A. The Conference's Authority to Sue SMU

SMU's primary argument is that the Conference lacks authority to bring its remaining declaratory-judgment and breach-of-contract claims, all of which stem from SMU's alleged ultra vires act of amending its articles of incorporation without Conference approval. Under Section 20.002 of the Code, which applies to both for-profit and nonprofit corporations, a corporate act "is not invalid because the act or transfer was" ultra vires—that is, "beyond the scope of the [corporation's]

13

purpose" or "inconsistent with a limitation on the authority of an officer or director" as that purpose or limitation "is expressed in the corporation's certificate of formation." TEX. BUS. ORGS. CODE § 20.002(b). However, "[t]he fact that an act or transfer is beyond the scope of the expressed [corporate] purpose . . . or is inconsistent with an expressed limitation on" an officer's or director's authority "may be asserted" in certain proceedings, specifically, "in a proceeding: (1) by a shareholder or member against the corporation to enjoin the performance of an act or the transfer of property by or to the corporation; (2) by the corporation [directly or derivatively] against an officer or director" for exceeding the scope of his authority; or (3) by the attorney general to, among other things, enjoin performance of an unauthorized corporate act. *Id.* § 20.002(c).

SMU argues that subsection (b) generally forecloses a challenge to the validity of a corporate act—here, the 2019 amendments to SMU's articles of incorporation—on the ground that the corporation's officers exceeded the scope of their authority as expressed in those articles—here, by amending the articles without the Conference's approval. And while subsection (c) contains certain exceptions to that prohibition for a limited class of persons, SMU asserts, the Conference does not fall within the scope of any of those exceptions—it is not a shareholder or member, the corporation itself, or the attorney general. *See Scudday v. King*, No. 04-20-00562-CV, 2022 WL 2230730, at *12 (Tex. App.—San Antonio June 22, 2022, pet. denied) (holding that the plaintiff lacked authority under Section 20.002(c)(2) to complain about a nonprofit corporation's officers' allegedly ultra vires acts when there

14

was no evidence the plaintiff was a representative or member of the corporation).

The court of appeals agreed that, to the extent the SMU board's adoption and filing of the 2019 amendments constituted an ultra vires act, "a suit under § 20.002(c) cannot be used to set aside that act." 674 S.W.3d at 361. But, focusing on subsection (b), the court held that the amendments "can be challenged by other means." *Id.* "Under subsection (b)," the court concluded, "a corporate act is not invalid *merely* because it is *ultra vires*. But if the act breaches some other legal duty imposed on the corporation *in addition* to being *ultra vires*, it may be challenged on that additional ground." *Id.* (first emphasis added) (citation omitted). We agree with the court of appeals that the Conference may challenge the 2019 amendments, though not entirely for the same reasons.

Because SMU is a nonprofit corporation, we focus largely on Chapter 22 of the Code, which applies specifically to such corporations. A nonprofit corporation generally may not distribute dividends or income to their members, directors, or officers. TEX. BUS. ORGS. CODE §§ 22.001(5), .053, .054. A nonprofit "may have one or more classes of members" or, like SMU, "may have no members." *Id.* § 22.151(a). As SMU contends, for a corporation with no members, an amendment to the corporation's certificate of formation requires a majority vote of the board of directors. *Id.* §§ 22.107(a), .164(b)(3). However, that default rule may be modified by "specific, lawful provision[s] in the corporate documents." *Masterson*, 422 S.W.3d at 610.

15

Such provisions have been present in SMU's articles of incorporation since 1916. The articles have generally provided that SMU would be "controlled by" the Conference and have specifically stated that they may not be amended absent the Conference's authorization and approval. And as the court of appeals held, those provisions are lawful under Chapter 22. 674 S.W.3d at 358. In particular, Section 22.207 provides:

> The board of directors of a religious, charitable, educational, or eleemosynary corporation may be affiliated with, elected, and controlled by an incorporated or unincorporated convention, conference, or association organized under the laws of this or another state, the membership of which is composed of representatives, delegates, or messengers from a church or other religious association.

TEX. BUS. ORGS. CODE § 22.207(a).

Section 22.207 is significant because it expressly authorizes the Conference, as "a church or other religious association," to assert and maintain the very right of control that SMU disputes and that its board has unilaterally purported to sever. The Conference's effort to do so is consistent with the Uniform Declaratory Judgments Act's express "remedial" purpose of "afford[ing] relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE § 37.002(b); *id.* § 37.004(a) ("A person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising [there]under . . . and obtain a declaration of rights, status, or other legal relations thereunder.").

16

SMU dismisses Section 22.207 as irrelevant because "[i]t doesn't say who can sue to challenge a nonprofit's authority to amend its governing documents." Instead, SMU asserts, Section 20.002(c) authorizes "[m]embers, shareholders, and the attorney general [to] sue to enforce a church's alleged control rights in a nonprofit—just not the Conference, which is none of those things." But SMU has no members or shareholders, and the attorney general can sue under Section 20.002(c) only to "*enjoin* the corporation from performing an unauthorized act." TEX. BUS. ORGS. CODE § 20.002(c)(3)(B) (emphasis added).[8] As the court of appeals recognized, subsection (c) does not contemplate an action by the attorney general to set aside an unauthorized act that has already been performed. *See* 674 S.W.3d at 361 (noting that "[a]n injunction cannot undo [the SMU board's] act" of adopting the 2019 amendments, "which had already gone into effect when the Conference filed this lawsuit"). SMU would thus view the Code as simultaneously granting a right and ensuring the holder has no mechanism to enforce it. We decline to do so. *See Glen Oaks Utils., Inc. v. City of Houston*, 340 S.W.2d 783, 784 (Tex. 1960) (rejecting the city's argument that the courts lacked jurisdiction to consider a procedural due process challenge to an ordinance that was "regular and valid" on its face because "otherwise the [challenger] would have a right without a remedy").

---

[8] The attorney general can also sue to "terminate the corporation" or to "enforce divestment of real property acquired or held contrary to the laws of this state." TEX. BUS. ORGS. CODE § 20.002(c)(3)(A), (C). Neither of those provisions is relevant here.

17

Section 22.207 is a specific provision focused on a narrow circumstance. But it is a circumstance that unquestionably is present here given SMU's status as a nonprofit educational corporation, the Conference's status as a religious entity, and the 1996 articles of incorporation's express recognition of the Conference's right of control. Accordingly, the far more general provisions of Section 20.002(c) cannot control over the specific requirements of Section 22.207. *See, e.g.*, *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000). Even if we were less confident of that reading, however, the result would be the same because the doctrine of constitutional avoidance would lead us to resolve any ambiguity in favor of the Conference. *See, e.g.*, *Borgelt v. Austin Firefighters Ass'n*, 692 S.W.3d 288, 303 (Tex. 2024). If one statutory reading allows a religious entity to access the courts to protect its right to control a nonprofit corporation it established to further its religious mission, while another reading would deprive the religious entity of that right, we would select the reading that avoids any tension with the substantive legal protections for religious exercise that the Texas Constitution affords. *See, e.g.*, TEX. CONST. art. I, § 6 (forbidding "control or interfere[nce] with the rights of conscience in matters of religion" and imposing an affirmative "duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship"). Section 22.207 appears to be the kind of law contemplated by this provision of the Constitution.

We need not and do not decide whether SMU's reading of Section 20.002(c) in the absence of Section 22.207 would violate any

constitutional provision; harmonizing the two provisions allows us to avoid that issue. Nor do we address how SMU's reading would fare against an entity that is not covered by Section 22.207; that is, we do not foreclose SMU's general understanding of Section 20.002(c)'s scope or any of its other contentions about nonprofit corporations law outside the circumstances of today's case. We reserve any holding regarding those questions for cases that implicate them.

Accordingly, we hold that Section 22.207 of the Code protects the Conference's authority to sue SMU to enforce its rights under the 1996 articles and that Section 20.002 therefore does not deprive the Conference of that authority. We turn to SMU's other grounds for challenging the breach-of-contract and false-filing claims.

## B. Breach of Contract

In holding that the trial court erred in dismissing the Conference's breach-of-contract claim, the court of appeals concluded that the Conference's pleadings sufficiently allege that the 1996 articles are a legally binding contract between SMU and the Conference. 674 S.W.3d at 365. SMU disputes this conclusion, arguing that the articles of incorporation of a nonmember, nonprofit corporation do not give rise to contractual rights.[9] We agree with the result reached by the court of appeals but not its reasoning.

We have recognized that in the for-profit context, a corporation's charter creates a contractual relationship between the corporation and

---

[9] SMU does not argue that the evidence does not support the elements of a breach-of-contract claim; it contends only that a contract cannot exist as a matter of law under the circumstances.

19

its shareholders. *Ritchie v. Rupe*, 443 S.W.3d 856, 880 (Tex. 2014); *see also Calvert v. Cap. Sw. Corp.*, 441 S.W.2d 247, 255 (Tex. App.—Austin 1969, writ ref'd n.r.e.). The court of appeals in *Overland Automobile Co. v. Cleveland* summarized the relationship as follows:

> A charter of a private corporation is a contract, it is true. It is a contract between the government which grants it and the corporation. It is also a contract between the corporation and the shareholders. The contract between the corporation and the shareholders, however, is a contract concerning the pursuit of the objects for which it is created. The stockholders and the corporation between themselves must abide by the articles of association and the by-laws. The stockholders are contractually bound to submit to the management of the business by the managing officers and board of directors under the by-laws. There also exists a contract among the stockholders with each other by virtue of the charter to the effect that the business will be directed and the funds applied in conformity with the charter.

250 S.W. 453, 455 (Tex. App.—Dallas 1923, writ dism'd w.o.j.); *see also Ainsworth v. Sw. Drug Corp.*, 95 F.2d 172, 173 (5th Cir. 1938) (applying Texas law) ("[T]he charter and by-laws of a corporation constitute a contract between the company and its stockholders, into which the statutes of the state of its incorporation enter and are controlling."). The Code expressly envisions this contractual relationship, providing that shareholders of a for-profit corporation may enter into a "shareholders' agreement" setting out how the corporation will be governed if the agreement is (1) in "the certificate of formation or bylaws if approved by all of the shareholders at the time of the agreement" or (2) in a written agreement signed by all shareholders at the time of the agreement and made known to the corporation. TEX. BUS. ORGS. CODE § 21.101(b)(1).

20

The contractual relationship between a for-profit corporation and its shareholders makes sense because such corporations operate primarily to benefit their shareholders. A nonprofit corporation, by contrast, has no shareholders, and, generally speaking, "no part of the income of [a nonprofit corporation] is distributable to a member, director, or officer of the corporation." *Id.* § 22.001(5); *see also id.* § 22.053 ("Except as provided by Section 22.054, a dividend may not be paid to, and no part of the income of a corporation may be distributed to, the corporation's members, directors, or officers."). However, limited exceptions to this prohibition allow a nonprofit corporation to, among other things, "confer benefits on the corporation's members in conformity with the corporation's purposes" and "make distributions to the corporation's members on winding up and termination to the extent authorized by . . . chapter [22]." *Id.* § 22.054. Arguably then—although we need not definitively opine on the issue—articles of incorporation can similarly give rise to contractual obligations between a nonprofit corporation and its *members*.[10]

However, a nonmember, nonprofit corporation operates "not for private profit or its own benefit" but "for the benefit of the public." *See Abbott v. Blue Cross & Blue Shield of Tex., Inc.*, 113 S.W.3d 753, 765 (Tex. App.—Austin 2003, pet. denied) (emphasis omitted) (evaluating whether Blue Cross, a nonprofit corporation, qualified as a "charitable corporation" for purposes of applying the *cy pres* doctrine). Though

---

[10] SMU makes this very argument, contending that members of a nonprofit have contractual rights deriving from its articles of incorporation but nonmembers have no such rights.

21

neither party cites any directly on-point Texas precedent,[11] courts in other jurisdictions have held that a nonprofit's articles of incorporation do not confer contractual rights on nonmembers. *See, e.g.*, *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conf. Ctr.*, 280 S.W.3d 678, 692–93 (Mo. Ct. App. 2009) (holding that nonmembers "do not have [contractual] rights deriving solely from a corporation's articles of incorporation"; "only members" do).

We agree with SMU that its articles of incorporation are not a contract between SMU and *the Conference*. Again, a nonmember, nonprofit corporation is formed to benefit the public. The very articles of incorporation on which the Conference relies describe the purpose for which SMU was formed as "the establishment, maintenance and support of an institution for higher learning." While the articles reflect that SMU would be "controlled by" the Conference, SMU is not required to act for the Conference's benefit in the way that corporations must act for the benefit of their shareholders or members. Nor does the Code provide for the equivalent of a shareholders' agreement in the nonprofit context.

---

[11] The Conference cites *High Road on Dawson v. Benevolent & Protective Order of Elks of the U.S., Inc.*, 608 S.W.3d 869, 887 (Tex. App.—Houston [14th Dist.] 2020, pet. denied), for the proposition that a nonprofit's governing documents can constitute an enforceable contract between a nonprofit and its controlling entity. But *High Road* does not support such a broad proposition. First, that case dealt with the relationship between a national hierarchical organization and a subordinate lodge—a relationship that is governed by a separate subchapter of the Code. *Id.* at 874; *see* TEX. BUS. ORGS. CODE §§ 23.101–.110. Further, the national organization in *High Road* had its own governing documents that the lodge had agreed to follow; it had not merely been granted rights in the lodge's articles. 608 S.W.3d at 880.

22

However, as with for-profit corporations, a nonprofit corporation's articles *do* constitute a contract between SMU and *the State of Texas*. *See Overland Auto. Co.*, 250 S.W. at 455; *Santa Rosa Infirmary v. City of San Antonio*, 259 S.W. 926, 935 (Tex. Comm'n App. 1924, judgm't adopted) ("By their very incorporation for purely charitable and benevolent purposes [charitable corporations] have made a contract with the state . . . ."). The Conference alternatively alleges in its petition that it is a third-party beneficiary of that contract and may pursue its breach-of-contract claim in that capacity.[12] We agree.

Although, as a general rule, only parties to a contract can sue to enforce it, an exception applies to a nonparty who qualifies as a third-party beneficiary of the contract. *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). In *First Bank*, we summarized the "[w]ell-established principles" that govern the third-party-beneficiary analysis:

> Absent a statutory or other legal rule to the contrary, a person's status as a third-party beneficiary depends solely on the contracting parties' intent. Specifically, a person seeking to establish third-party-beneficiary status must demonstrate that the contracting parties intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit. It is not enough that the third party would benefit—whether directly or indirectly—from the parties' performance, or that the parties knew that the third party would benefit. Nor does it matter that the third party intended or expected to benefit from the contract, for only the intention

---

[12] Because the court of appeals concluded that the 1996 articles constitute a valid contract between the Conference and SMU, it did not reach the third-party-beneficiary issue. 674 S.W.3d at 364 n.19.

23

of the contracting parties in this respect is of controlling importance. To create a third-party beneficiary, the contracting parties must have intended to grant the third party the right to be a claimant in the event of a breach.

*Id.* (citations and internal quotation marks omitted).

SMU's articles include numerous unequivocal statements that expressly and directly benefit the Conference. *See City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) ("look[ing] to the entire agreement, giving effect to all its provisions," to "determin[e] whether there is intent to benefit a third party"). For example, all trustees must first be elected by the Conference (Article VI(3)); the Conference may remove any trustee for cause (Article VI(5)); and campus property cannot be sold or leased without the Conference's consent (Article XIII). Indeed, the Conference's general authority is enshrined in the articles' stated purpose: to create an educational institution "forever owned, maintained and controlled by" the Conference. And Article XII specifically prohibits amending the articles without the Conference's affirmative authorization and approval. SMU's unilateral amendment of the 1996 articles of incorporation obliterated all these rights and benefits, and more.[13]

In *Williams*, we held that a city's firefighters could sue the city as third-party beneficiaries to a contract between the city and the firefighters' union where the agreement plainly stated a purpose to

---

[13] The Conference additionally had the right under the 1996 articles to: nominate no fewer than twelve members of the board of trustees (Article VI(1)); fix the qualifications for all trustees (Article VIII); and fill any unelected vacancies on the board (Article X).

benefit the firefighters in its preamble and then "directly guarantee[d]" specific benefits to the firefighters. *Id.* at 146. The statements in SMU's articles of incorporation, conferring a variety of meaningful rights directly on the Conference, are at least as clear and unequivocal as the statements in the contract at issue in *Williams*. *See id.* at 146 n.18 (noting that the agreement made promises regarding the firefighters' longevity pay, classification pay, educational incentive pay, assignment pay, and termination pay), n.19 ("All overtime pay and hours calculations . . . shall be governed by [federal, state, and city law]."), n.20 (noting that the agreement promised minimums for the firefighters' vacation leave).

We recognize, of course, the unique nature of the "contract" established by a corporation's articles of incorporation. Although the State is a "party" to that contract, it is not the product of a bargain or negotiation. The State has no involvement in the substance of the articles' terms so long as they do not violate the law; it has no interest, for example, in the corporation's stated purpose, or whether it has members, or the qualifications of the board of trustees, or how those board members are elected or removed.[14]

However, we need not decide today whether articles of incorporation, standing alone, could confer enforceable third-party-beneficiary status. Even if such status never arises from

---

[14] In that respect, we do not disagree with the dissent that *Williams* is distinguishable. *See post* at 5 (Bland, J., dissenting in part). We cite *Williams* as an example of contractual language that expressly and clearly confers rights on a specific third party.

articles on their own, we emphasized in *First Bank* that "a statutory or other legal rule" could trump the general rules governing third-party-beneficiary status. 519 S.W.3d at 102. A statute providing the requisite State intent to confer such status, combined with sufficient indicia in the articles, would thus justify a third-party-beneficiary finding. In this case, the key provision is Business Organizations Code Section 22.207, which, as discussed above, expressly authorizes a religious association to "be affiliated with" a nonprofit educational corporation and to "elect[]" and "control[]" the corporation's board. TEX. BUS. ORGS. CODE § 22.207. That statute ensures the lawfulness of the 1996 articles' provisions giving the Conference—a "third party" to the contract—such control. *Cf. Exec. Bd. of Mo. Baptist Convention*, 280 S.W.3d at 692 (holding that the Baptist Convention, a nonmember of a nonprofit corporation whose original articles gave the Convention certain rights with respect to election of trustees and distribution of assets on dissolution, could have protected those rights by including a statutorily authorized provision in the articles requiring the Convention's approval before they could be amended). Considering Section 22.207 in conjunction with SMU's 1996 articles' terms, we agree with the Conference that it qualifies as a third-party beneficiary of those articles and may thus pursue its breach-of-contract claim against SMU.[15]

---

[15] Again, we express no opinion on whether some other legal authority, or the articles themselves, would allow the Conference to qualify as a third-party beneficiary in the absence of Section 22.207. We also express no opinion on any other aspect of the contract claim.

We again emphasize that the right to sue is available only to the third party to whom the contract expressly grants contractual rights—here, the Conference.[16] The fact that others (individual members of the Conference and Methodist Church) might be within the class of people the *corporation* is intended to benefit would not entitle them to sue to enforce the articles as third-party beneficiaries because the articles confer no rights upon them. *See First Bank*, 519 S.W.3d at 102 ("It is not enough that the third party would benefit—whether directly or indirectly—from the parties' performance, or that the parties knew that the third party would benefit."). But, unlike that large and amorphous class of people who are nowhere mentioned in the articles, the articles, under the auspices of Section 22.207, repeatedly single out the Conference and expressly articulate precise powers the Conference may wield. While concerns about expanding the rights of interlopers to sue on a contract to which they are not a party are perfectly valid, recognizing the Conference's right here to survive a Rule 91a motion

_____

[16] The dissent describes the Conference as "tak[ing] on the role of the State" in pursuing its contract claim. *Post* at 7 (Bland, J., dissenting in part). We fail to see how the Conference's enforcement of its *own* rights as a third-party beneficiary places it in the position of acting on the State's behalf.

The dissent also takes issue with allowing private parties to seek damages for a violation of articles of incorporation. *See id.* at 6–8. This concern is significantly minimized, if not negated, by the narrowness of our holding: the Conference may pursue its contract claim based on its status as a religious association that controls a nonprofit educational corporation under Section 22.207's express authority. For its part, the Conference unsurprisingly seeks damages only in the alternative; indeed, although we need not address the issue, SMU maintains that the Conference has presented no evidence of monetary damages.

27

falls squarely within our precedents and does not risk opening the proverbial floodgates.[17]

We therefore hold that the trial court erred in dismissing the Conference's breach-of-contract claim. The court of appeals correctly remanded that claim to the trial court for further proceedings.

## C. False Filing

Finally, we address the Conference's false-filing claim under Sections 4.007 and 4.008 of the Code. Section 4.008 makes it a criminal offense for a person to "sign[] or direct[] the filing of a filing instrument that the person knows is materially false with intent that the filing instrument be delivered on behalf of an entity to the secretary of state for filing." TEX. BUS. ORGS. CODE § 4.008(a). Section 4.007 in turn provides a private right of action for "damages, court costs, and reasonable attorney's fees" to a person who "incurs a loss . . . caused by a . . . filed filing instrument that constitutes an offense under Section 4.008." *Id.* § 4.007(a)(1)(B).

The Conference claims that the filed certificate of amendment accompanying the 2019 articles, signed by "Paul J. Ward, Vice President and Secretary" of SMU, contained the "materially false" statement that the amendments "have been approved in the manner required by . . . the governing documents of the entity." SMU argues summary judgment

[17] The dissent's suggestion that our holding grants third-party-beneficiary status to countless individuals based on "the benevolent intent of SMU alone," *see id.* at 8, is thus unfounded and is in fact directly contrary to the significant limitations on such status that we reaffirm in this opinion.

28

was proper on this claim because (1) the complained-of statement was a good-faith legal opinion that inherently cannot be "materially false" and (2) the Conference offered no evidence of damages. We hold that the trial court properly granted summary judgment on this claim because the certificate of amendment, considered as a whole, did not constitute a materially false filing instrument as a matter of law and its filing thus did not constitute an offense under Section 4.008. We therefore need not reach the damages issue.

It is well settled that, with very limited exceptions, "[p]ure expressions of opinion are not representations of material fact, and thus cannot provide a basis for a fraud claim." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337–38 (Tex. 2011). The court of appeals declined to apply this rule in the context of a claim under Section 4.007, opining that "[t]he reason pure expressions of opinion are not representations of material fact, and thus not actionable in fraud, is because one is not justified in relying on a pure expression of opinion." 674 S.W.3d at 378. A false-filing claim under Section 4.007, however, "does not require proof of the plaintiff's justifiable reliance" on the false statement, so, the court concluded, such a claim can be based on a stated legal opinion. *Id.* Assuming without deciding that a legal opinion can give rise to liability under Section 4.007, we nevertheless agree with SMU that no genuine issue of material fact exists with respect to whether the certificate of amendment SMU filed with the secretary of state constituted a materially false instrument.

A certificate of amendment is a fillable form document created by the secretary of state. The document contains a preprinted "Statement

29

of Approval" certifying: "The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity." The Conference argues that because SMU's governing documents required Conference approval to amend them and SMU did not obtain that approval, there is evidence that the certificate's "Statement of Approval" is materially false.

However, we cannot read that statement in a vacuum. Section 4.008 asks whether the filed *instrument* was materially false, and the certificate contains additional, explanatory language. Specifically, in the section of the form immediately following the approval statement,[18] SMU inserted the following:

> The amendments in the attached Addendum to the Certificate of Amendment to the Restated Articles of Incorporation were authorized and approved by the Board of Trustees of Southern Methodist University . . . who were elected by the South Central Jurisdictional Conference of the United Methodist Church[.] No additional authorization or approval by the UMC has been provided as none is required or permitted pursuant to Section 22.107(a) of the Texas Business Organizations Code[.] Based on the foregoing and on the advice of independent legal counsel, the undersigned certifies that this Certificate of Amendment is in accordance with both the [Code] and the University's Restated Articles of Incorporation.

---

[18] The Conference discounts the explanation in part because it is contained in the section relating to the date of effectiveness of the filing. But the reason for the statement's placement appears to be purely logistical: that section, unlike the preprinted approval statement, includes a space for the filer to provide additional information.

The certificate thus confirmed that, as the Conference itself complains, SMU had *not* obtained Conference approval for the amendments. The reason, the certificate states, is that SMU concluded on advice of counsel that such approval was not required under Texas law.

To controvert the veracity of that statement, the Conference argues that SMU's current president had signed the 1996 articles of amendment, which stated that the amendment had been approved by an authorized agency of the Conference in accordance with the articles. Assuming this indicates that SMU's president believed in 1996 that Conference approval was required, we fail to see how this calls into question Ward's statement regarding his conclusion in 2019, based on advice of counsel, that such approval was *not* required. Absent such evidence, no genuine issue of material fact exists. Accordingly, the court of appeals erred in reversing the trial court's summary judgment on the false-filing claim.

## V. Conclusion

We hold that the Conference has statutory authority to pursue its claims regarding the validity of the 2019 amendments to SMU's articles of incorporation. We further hold that the Conference may pursue its breach-of-contract claim as a third-party beneficiary of SMU's 1996 articles of incorporation. However, the Conference failed to demonstrate a genuine issue of material fact on its false-filing claim under Section 4.007. Accordingly, the court of appeals correctly reversed the trial court's dismissal of the claims for declaratory judgment and breach of contract and erroneously reversed the trial court's summary judgment on the false-filing claim. We affirm the court of appeals' judgment in

31

part, reverse it in part, and remand the case to the trial court for further proceedings.

_____

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 27, 2025